L. Kathleen Chaney, #6-3211
Eric D. Hevenor, #6-4435
Lambdin & Chaney, LLP
4949 South Syracuse Street
Suite 600
Denver, CO 80237
TEL: (303)-799-8889
E-mail: kchaney@ lclaw.net
      ehevenor@lclaw.net

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **ASHLEY WILLEY, SEAN WILLEY**<br><br>                Plaintiffs,<br><br>vs.<br><br>**SWEETWATER COUNTY SCHOOL DISTRICT # 1 BOARD OF TRUSTEES; KELLY McGOVERN,** Superintendent of Sweetwater County District #1, individually; **NICOLE BOLTON,** Assistant Superintendent & Human Resources Director of Sweetwater County District #1, individually; **KAYCI ARNOLDI,** Director of Student Services of Sweetwater County School District #1 individually; **BRYANT BLAKE,** Principal of Black Butte High School, individually<br><br>                Defendants. | Civil Case No. 23-cv-69-S |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendants, by and through their attorneys, Lambdin & Chaney, LLP, hereby submit this Response to Plaintiffs' Motion for Preliminary Injunction, stating as follows:

## I. INTRODUCTION

Plaintiffs' Motion for Preliminary Injunction ("Plaintiffs Motion") [Doc. 6] is internally inconsistent and legally incoherent on its face. Plaintiffs seek an order from this Court enjoining the District from:

    1.    Concealing from them information regarding their child, A.S.'s social transitioning at school; and

    2.    Requiring Plaintiff Ashley Willey to use purportedly "gender discordant names and pronouns" as a teacher within the District.

Thus, Plaintiff Ashley Willey is seeking to both prevent her child from using chosen names and pronouns under the guise of parental rights while also asking the Court to exempt her from respecting the rights of other parents who would potentially ask her as a teacher to utilize chosen names and pronouns for their transgendered child. In short, Plaintiff Ashley Willey isn't seeking to advance any particular legal principle, but instead is attempting to use this Court as a cudgel to enforce her personal preferences as law.

  Plaintiffs cannot succeed on the merits of the case because their complaints are moot or not yet ripe for justiciability and seek relief that is in direct violation of the law. Plaintiffs cannot demonstrate irreparable harm where the issues they raise in their Complaint are either not happening or have never happened. There is no threatened injury to any party if the District's procedure of compliance with federal law is followed, but a substantial risk of losing federal funding exists if Title IX is ignored. Losing federal school funding will adversely affect the public interest. No factual or legal basis exists for granting a preliminary injunction in the present action.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

A.S. is a student at Black Butte High School which is a school within the District. Contrary to Plaintiffs' allegations, upon information and belief Plaintiff Ashley Willey is not the sole legal guardian of A.S. as her biological father maintains a parental role in the minor's life and no evidence of termination of his parental rights has been identified by the District.

A.S. asked to be referred to by the moniker C.S.[1] and to be addressed using they/them or he/him pronouns at school. The staff of Black Butte High School complied with A.S.'s request per District procedure (the "Procedure") and federal law. (Exhibit A, *SCSD #1 Special Services Non-Negotiables,* pp. 2-3)  Notably, the Procedure is not specific to gender identity:

> Preferred/Chosen Names Procedure. As you become acquainted with your students, you may encounter students wishing to use a preferred or chosen name. A preferred/chosen name is any name a student chooses to use other than their legal name. For example, a student may wish to shorten their first name (e.g., Steven to Steve) or to be referred to by their middle name or a nickname. Sweetwater County School District Number One is committed to promoting an educational environment that is supportive and respectful to all students. Calling a person by their preferred name and pronoun shows respect and contributes to the District's commitment to providing a safe and nondiscriminatory educational environment. Accordingly, staff must use a student's preferred/chosen name or pronoun in verbal, written, and electronic communications.  Staff must respect the privacy of all students regarding such a choice.
>
> Violations of this procedure may constitute discrimination based on sex, and may result in discipline. Students who experience problems or discrimination related to their preferred/chosen name or pronoun shall be referred to the Title IX Coordinator for resources and assistance.  This procedure does not address changes to educational records to reflect name changes. Any requests to amend educational records shall be referred to the Director of Human Resources.

*Id.*

The District adopted the Procedure as a necessary requirement of complying with Title IX of the Education Amendments of 1972.  The Office of Civil Rights has created an online complaint

---

[1] For sake of clarity, the actual names referred to herein by the initials A.S., C.S., and R.S. are attached hereto as Appendix 1 and will be filed under seal to protect the identity of the minor.

form to investigate claims of discrimination based on gender identity or transgender status. *See https://www2.ed.gov/about/offices/list/ocr/complaintintro.html.* The Office of Civil Rights expressly lists public schools as entities covered by its authority. *Id.*

The Procedure does not, as Plaintiffs' strawman arguments claim, require staff to assist in a student's social transitioning, engage in deceit, or provide mental health services to students. It is a content neutral rule requiring staff to use all students' chosen names and pronouns regardless of sexual orientation or gender identity.

Subsequently, as set forth in Plaintiffs' Complaint, A.S., rescinded her request to be referred to by any name other than her legal name and is not asking to be referred to by male pronouns. [Doc. 1, ¶ 39]; *see also* Exhibit B – *Affidavit of Nicole Bolton*. Therefore, Plaintiffs' claims as they relate to A.S. are not only moot, but do not potentially implicate any potential for irreparable harm if a preliminary injunction is denied.

Similarly, no student or their family has ever asked Ashley Willey to use purportedly "gender discordant names and pronouns." Therefore, Plaintiffs' claims as they relate to Ashley Willey are not ripe for justiciability and do not potentially implicate any potential for irreparable harm if a preliminary junction is denied.

It is indisputable that no present case or controversy exists. No potential for irreparable harm can be demonstrated when the factual allegations underpinning Plaintiff's Motion are non-existent.

### III.   ARGUMENT

To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Gen. Motors Corp. v.*

*Urb. Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (citing *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255 (10th Cir.2003)). Further, when a preliminary injunction would alter the status quo the movant bears a heightened burden and "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Id.* (citing *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir.2004)).  "A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Miller v. Austin*, No. 22-CV-118-SWS, 2022 WL 3584666, at *2, --F.Supp.3d-- (D. Wyo. Aug. 22, 2022) (citing *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019).

Plaintiffs cannot establish a single factor in support of their Motion for Preliminary Injunction.  Therefore, the motion should be denied.

    **A.**    **Plaintiffs Will Not Succeed on the Merits**

        *1.*    *Plaintiffs' Claims Related to A.S. Are Moot and/or Plaintiffs Lack Standing to Seek a Preliminary Injunction.*

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Disability L. Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005) (citing *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir.1996); U.S. Const. art. III, § 2, cl. 1.) Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies.

To establish standing, Plaintiffs must demonstrate: (1) an invasion of a legally protected interest which is (a) concrete and particularized; (b) "actual or imminent, not 'conjectural' or 'hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (internal citations omitted); (2) a causal connection between the injury and the conduct

complained of; and (3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Plaintiffs' Complaint concedes that A.S. has requested to be referred to by her legal name and by female pronouns. [Doc. 1, ¶ 39] No dispute exists that the District has honored that request and refers to A.S. by her legal name and female pronouns. (Exhibit B, ¶ 6).  In fact, A.S. recently won Black Butte High School's Student of the Week for April 11-15, 2023 and was featured on the Black Butte High School official Facebook page by her legal name. (Exhibit C, *Screenshot of Facebook Page*).  Therefore, by their own admission, Plaintiffs cannot establish an actual case or controversy exists or that they suffer from an actual or imminent invasion of a legally protected interest that is more than speculative or hypothetical.  Plaintiffs cannot demonstrate a likelihood of success on the merits when their claims are moot and/or they lack standing.

> 2. *Plaintiffs' Claims Related to Ashley Willey Are Not Ripe and/or Plaintiffs Lack Standing to Seek a Preliminary Injunction.*

A division of this Court addressed the interconnected questions of standing and ripeness in *Miller v. Austin, supra,* holding that the court may not adjudicate a claim "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" because that issue is not ripe. *Miller* 2022 WL 3584666, at *3.

The *Miller* Court declined to address preliminary injunction factors for soldiers seeking to prevent their involuntary separation from the armed forces based on their refusal to accept the Covid-19 vaccine due to their pending request for a religious exemption.  Because the separation had not yet occurred and the request for exemption had not been decided, the case was not ripe for justiciability.

The identical factors apply here. In her role as an educator within the District, Ashley Willey has never been asked to use a student's chosen name or pronouns on the basis of gender

identity. (Exhibit B, ¶ 9). It is possible, if not likely, that she never will be. Therefore, she has suffered no actual or imminent harm (if calling someone by their chosen name could indeed be considered a "harm") and her claims are based on contingent future events that may not occur at all. It is unlikely that Ms. Willey can prevail on the merits of her unripe claims for which she lacks standing.

      3.  *This Court and the District are Required to Follow Federal Law*

Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §1681 *et seq.* prohibits discrimination on the basis of sex in educational settings. Pursuant to Executive Orders 13988 "Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation" (Exhibit D) and 14021 "Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity" (Exhibit E) the requirements of Title IX apply to gender identity. The federal government has issued interpretation of Title IX to prevent discrimination based on gender identity in light of *Bostock v. Clayton Cnty., Georgia*, 207 L. Ed. 2d 218, 140 S. Ct. 1731 (2020) that explicitly extends the protection of Title IX to gender identity. *See* 86 Fed. Reg. at 32,637 (attached hereto as Exhibit F). Issuing the requested injunction would require the District to violate federal law.

Plaintiffs' Motion frames the District's compliance with federal law as a "decision" the District has made. The District is legally required to follow the mandates of Title IX as interpreted by the federal government or it risks the withdrawal of federal funds for all of its students. Plaintiffs waste considerable verbiage in their Motion arguing about "facilitating social transitioning" and "medical/mental health interventions" when the District has not engaged in either activity. The District simply has a Procedure that, in accordance with federal law, requires use of student's chosen names and pronouns – regardless of gender identity. A male student who shortens his name from Steven to Steve or Dennis to D.J. is not likely seeking to change his public gender

7

expression.  If his wish is accommodated, but a student seeking a new gender expression's request is not, then as a matter of Wyoming and federal law the District would be discriminating against the latter student.

Article I, § 2 of the Wyoming Constitution states: "In their inherent right to life, liberty and the pursuit of happiness, all members of the human race are equal." All members of the human race includes minors and people seeking respect for their chosen gender identity.  Article I, § 3 of the Wyoming Constitution states:

> Since equality in the enjoyment of natural and civil rights is only made sure through political equality, the laws of this state affecting the political rights and privileges of its citizens shall be without distinction of race, color, sex, **or any circumstance or condition whatsoever** other than individual incompetency, or unworthiness duly ascertained by a court of competent jurisdiction.

*Id.* (emphasis added)

"Any circumstance or condition whatsoever" would necessarily cover gender identity. Similarly, under federal law the United States Supreme Court determined in *Bostock* that discrimination on the basis of sex includes gender identity. *See Bostock*, 207 L. Ed. 2d 218, 140 S. Ct. 1731. In *Bostock,* the United States Supreme Court, in an opinion written by Justice Gorsuch, determined that treating an individual worse for actions or attributes it would tolerate in another sex is discrimination. Therefore, if an employer fired someone with male genitalia for dressing as a female or using female pronouns, but it would not do so if an employee with female genitalia did the same that constitutes discrimination as a matter of law.  It is under the backdrop of *Bostock* that the government issued its interpretation of Title IX that discrimination based on gender identity is a violation of the law. (Exhibit F).  Where, as here, a school would allow its staff to refer to a male student whose legal name is Bernard as "B.J." and would refer to him by traditionally male pronouns, but would not similarly permit staff to refer to a female student by

the traditionally male name of Bruce or use traditionally male pronouns, then that decision is necessarily made on the basis of the latter student's sex and is discriminatory under *Bostock*.

The government's interpretation (Exhibit F) cites numerous federal decisions recognizing Title IX's prohibition on sex discrimination encompasses sexual orientation and gender identity, including but not limited to *Grimm v. Gloucester Cnty. Sch. Bd*., 972 F.3d 586, 616 (4th Cir. 2020), as amended (Aug. 28, 2020), reh'g en banc denied, 976 F.3d 399 (4th Cir. 2020), petition for cert filed, No. 20– 1163  Feb. 24, 2021); *Adams v. Sch. Bd. of St. Johns Cnty*., 968 F.3d 1286, 1305 (11th Cir. 2020), petition for reh'g en banc pending, No. 18–13592 (Aug. 28, 2020); *Koenke v. Saint Joseph's Univ*., No. CV 19–4731, 2021 WL 75778, at *2 (E.D. Pa. Jan. 8, 2021); *Doe v. Univ. of Scranton*, No. 3:19–CV–01486, 2020 WL 5993766, at *11 n.61 (M.D. Pa. Oct. 9, 2020).

In *Grimm,* a transgender male student sued his local school board seeking damages related to the school district's bathroom policy that prevented him from using the men's restroom at school. The *Grimm* Court held the policy unconstitutional under Fourteenth Amendment as discrimination based on sex. *Id.* at 609.  The Court noted that "state action is unconstitutional when it creates "arbitrary or irrational" distinctions between classes of people out of "a bare ... desire to harm a politically unpopular group."' *Id.* at 607.  Therefore, not only Title IX, but also the United States Constitution bars discrimination based on gender identity.

Plaintiffs, unusually and disturbingly, cite to cases involving involuntary commitment of minors to mental health facilities, *Parham v. J. R*., 442 U.S. 584, 584, 99 S. Ct. 2493, 2494, 61 L. Ed. 2d 101 (1979); *Thomas v. Kaven*, 765 F.3d 1183 (10th Cir. 2014) in support of their argument that they are likely to succeed on the merits, while ignoring cases decided on virtually identical grounds in the educational arena such as *Grimm, Adams, Kroenke,* and *Doe, supra.* Plaintiffs assume without legal or factual support that using a student's chosen name constitutes "assisting

9

in social transitioning" and/or provision of mental health services. Nothing in the Procedure requires, or even implies, that the District or Black Butte High School has or will assist any student in social transitioning or that it will provide mental health services. The Procedure states only that the District will use any student's chosen name out of respect for the student's wishes. Far from interfering with any parents' parental rights or religious freedoms, the Procedure takes no position regarding parental teachings about gender identity. Nor does it make value judgments about a student's choice of name. The District must not be required to act as the intermediary in personal family disputes as Plaintiffs appear to demand.

Plaintiffs requested injunction opens Pandora's box of potential outcomes. Would the District be required to stop serving beef at school cafeterias if a Hindu student disobeyed their parents' religious teachings? Could that not be considered assisting the student in transitioning to a meat-based diet? Should fundamentalist Muslim teachers be exempted from teaching female students to read? *See* https://www.npr.org/sections/goatsandsoda/2022/12/21/1144703393/ taliban-begins-to-enforce-education-ban-leaving-afghan-women-with-tears-and-ange. Undoubtedly their beliefs are deeply held and sincere. Perhaps Plaintiffs believe only Christian parental beliefs should be enforced at the District level. Should the District exempt "Bible Earther" teachers and students from learning about a spherical earth? *See* https://www.colorado.edu/ initiative/ newscorps/2019/06/25/bible-earthers-are-out-world. The Ku Klux Klan frames itself as a white Christian organization. Would accommodating their religious beliefs require a return to segregation? Of course not. Despite rabid protests that desegregating schools would violate the fundamental laws of God and nature causing irreparable harm to students and community, the United States Supreme Court rightly decided that "separate but equal" was discriminatory under *Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873

(1954), supplemented sub nom. *Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294, 75 S. Ct. 753, 99 L. Ed. 1083 (1955).

It is the self-same principles decided in *Brown* that support the recent holding in *Grimm,* discussed, *supra*. It is neither the fervency of a plaintiffs' belief, nor the extremity of their fear that guides Fourteenth Amendment jurisprudence. The present action isn't about social transitioning or provision of mental health services. It is about every student's right to be called by whatever name they choose – regardless of race, creed, sex, religion, national origin, or gender identity. Equal protection for all human beings is enshrined in both the Wyoming and United States Constitutions. If anything, the Wyoming Constitution goes much further in requiring that unequal treatment is not tolerated under any circumstance or condition whatsoever. *See* Article I, § 3 of the Wyoming Constitution. Even if the present action involved a current case or controversy, both Wyoming and federal law would require finding on behalf of the District. The cases cited by Plaintiffs have nothing to do with the present facts.

The United States District Court for the Northern District of Florida recently dismissed a case based on similar facts as alleged by Plaintiffs, in *Littlejohn v. Sch. Bd. of Leon Cnty. Fla.*, No. 4:21CV415-MW/MJF, 2022 WL 18670372, --F.Supp.3d-- (N.D. Fla. Dec. 22, 2022), attached hereto as Exhibit G. In *Littlejohn,* the Court held that the parents request for injunctive relief was moot based on the fact the complained of guidance was no longer being enforced, while holding that school officials acted within the scope of their discretionary authority by meeting with a student outside of their parents' presence to discuss a support plan for the student's gender confusion.

Cases that apply Title IX in the educational arena repeatedly hold that schools are not permitted to discriminate against students based on gender identity, and that working with students

who are dealing with gender identity issues is within the province of the school's authority. It is not a violation of a religious or parental right to enact a neutral policy of inclusion that comports with federal law. Plaintiffs' issue isn't truly with the District or the Procedure. Their issue is with Title IX itself. Both this Court and the District are required to follow federal law. The injunction Plaintiffs seek would violate Title IX, as well as the Wyoming and United States Constitutions and, therefore, cannot be granted.

### B. Plaintiffs Cannot Establish Imminent or Irreparable Harm

As established above, Plaintiffs concede that the District is following A.S.'s request to be addressed by her legal name and female pronouns at school. Therefore, there is no District conduct for the Court to enjoin. Further, no action of the District can impact A.S.'s out-of-school conduct regarding gender identity. For example, on the public Facebook post congratulating A.S. for winning student of the week, both Ashley Willey and A.S. using her chosen moniker, R.S., "liked" the post. (Exhibit H, *Screenshot of Facebook "Like"*). R.S.'s Facebook profile describes them as "pro choice, ftm, gay, cosplayer, anime lover, loves sports and books, severe adhd, probably autistic." Upon information and belief, the acronym "ftm" stands for female-to-male. A.S.'s public Facebook activity as R.S. suggests that it isn't any alleged "interference" of the District that will cause the alleged litany of evils outlined in Plaintiffs' Motion. To the extent Plaintiffs can establish that social transitioning potentially leads to harm, A.S.'s decision making is outside the realm of what Black Butte High School or the District can control. The issues Plaintiffs raise concerns about are not happening at school. Granting an injunction against an activity that is not happening will not have any discernible impact on the purported harms alleged by Plaintiffs.

No legal cause exists to grant an injunction barring Ashley Willey from following the Procedure in relation to something that has never happened and likely never will. Ms. Willey cannot succeed on the merits because she has no standing to bring a claim.

### C. There is No Threatened Injury to Plaintiffs, Whereas the District Risks the Loss of Federal Funding.

As set forth above, no threatened injury exists to Plaintiffs because the District is addressing A.S. by her legal name and pronouns and Ashley Willey has never been asked to address any student by something other than their legal name based on gender identity, though presumably she has used nicknames in other contexts. Thus, Plaintiffs cannot plausibly allege a threatened injury.

Conversely, the penalty for the District failing to follow the mandates of Title IX, including the governing interpretation and Executive Orders, is the loss of federal funding or a penalty of monetary damages against it. *See Franklin v. Gwinnett Cnty. Pub. Sch.,* 503 U.S. 60, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992). On balance, the lack of a threatened injury is much less substantial than the very real possibility of a damages award against the District for failure to comply with federal law.

### D. Granting an Injunction Would Threaten the Public Interest

All students and families of students attending District schools have a vested interest in the education of their students which would necessarily be impacted by the granting of an injunction in this case. An injunction, which by necessity would violate federal law, would cause the District to incur penalties and potentially lose federal funding under Title IX.

Further, an injunction would effectively suspend application of the Procedure upon which many other students rely, regardless of their gender identity. The express purpose of the Procedure is to further the District's commitment to providing a safe and nondiscriminatory educational environment. (Exhibit A). The public has a legitimate interest in maintaining a safe and

nondiscriminatory educational environment. No identifiable interest will be advanced by granting the requested injunction.

## IV.   CONCLUSION

Plaintiffs raise nothing but strawman arguments relating to social transitioning and mental healthcare in seeking an injunction, rather than acknowledging the present facts that A.S. is being addressed by her legal name at school and that Ashley Willey has never been asked to call a student by anything other than their legal name based on gender identity issues.  Plaintiffs' desire to seek their fifteen minutes of fame and try this case in the press notwithstanding, there is no justiciable issue in controversy and no need exists for a preliminary injunction.

Even if Plaintiffs had standing to pursue their claims, persuasive precedent interpreting Title IX against virtually identical school policies all weighs in favor of the District. It is unlikely that Plaintiffs could ever prevail on the merits of their claims. Nor in the absence of an actual controversy is there a threat of irreparable harm warranting a preliminary injunction.  Plaintiffs face no threatened harm, yet an injunction would almost certainly cause harm to the District through causing it to violate Title IX.  Therefore, every enumerated factor requires denying Plaintiffs' Motion for Preliminary Injunction.

Wherefore, Defendants Sweetwater County School District #1 Board of Trustees and Sweetwater County School District #1 respectfully request this Court deny Plaintiffs' Motion for Preliminary Injunction and grant such further relief as the Court deems just under the circumstances.

Dated this 15th day of May 2023.

s/ <u>L. Kathleen Chaney</u>
L. Kathleen Chaney, #6-3211
Eric D. Hevenor, #6-4435
LAMBDIN & CHANEY, LLP
4949 South Syracuse Street, Suite 600
Denver, CO 80237
(303) 799-8889
(303) 799-3700 (facsimile)
Email: kchaney@lclaw.net
ehevenor@lclaw.net
*Attorneys for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May 2023, a true and correct copy of the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** was filed with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

Henry F. Bailey Jr., #5-1681
Bailey Stock Harmon Cottam Lopez LLP
6234 Yellowstone Road
Cheyenne, WY 82009
hank@performance-law.com
*Counsel for Plaintiffs*


Ernest G. Trakas (MO) #33813
Mary E. McAlister (VA) #76057
Vernadette R. Broyles* (GA) #593026
CHILD & PARENTAL RIGHTS CAMPAIGN
5805 State Bridge Road, Suite 310
Johns Creek, GA 30097
etrakas@childparentrights.org; mmcalister@childparentrights.org
vbroyles@childparentrights.org

*Printed copy with original signature on file at the office of Lambdin & Chaney, LLP*

s/ <u>L. Kathleen Chaney</u>
L. Kathleen Chaney, #6-3211
LAMBDIN & CHANEY, LLP
