L. Kathleen Chaney, #6-3211
Eric D. Hevenor, #6-4435
Lambdin & Chaney, LLP
4949 South Syracuse Street
Suite 600
Denver, CO 80237
TEL: (303)-799-8889
E-mail: kchaney@lclaw.net
      ehevenor@lclaw.net

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **ASHLEY WILLEY, SEAN WILLEY**<br><br>        Plaintiffs,<br><br>   vs.<br><br>**SWEETWATER COUNTY SCHOOL DISTRICT # 1 BOARD OF TRUSTEES, et al.**,<br><br>        Defendants. | Civil Case No. 23-cv-69-S |

## DEFENDANTS MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

Defendants, Sweetwater County School District #1 Board of Trustees, Kelly McGovern, Nicole Bolton, Kayci Arnoldi, and Bryant Blake (collectively the "District"), individually, by and through their attorneys, Lambdin & Chaney, LLP, hereby submit this Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), stating as follows:

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs allege four claims for relief in the present action that all ostensibly arise under 42 U.S.C. § 1983.  Specifically, Plaintiffs allege:

1. Violation Of Civil Rights, 42 U.S.C. § 1983 - (Violation of Plaintiffs' Substantive Due Process Fundamental Parental Right to Direct the Upbringing of Their Children under the U.S. Constitution);

2. Violation Of Civil Rights, 42 U.S.C. § 1983 – (Violation of Plaintiffs' Right to Free Exercise of Religion Under the U.S. Constitution);

3. Violation Of Civil Rights, 42 U.S.C. § 1983 – (Violation of Ashley Willey's Right to Free Exercise of Religion Under the U.S. Constitution)

4. Violation Of Civil Rights, 42 U.S.C. § 1983 - (Violation of the Right to Free Speech Under the U.S. Constitution)

All of Plaintiffs' claims arise from the District's Preferred/Chosen Names Procedure (the "Procedure")  The essence of Plaintiffs' allegations is that: (1) Defendants have violated Plaintiffs' constitutional rights by referring to their child, A.S. by names or pronouns other than those on her birth certificate; and (2) Defendants have violated Plaintiff Ashley Willey's constitutional rights by adopting a procedure requiring teachers to respect students requested names and pronouns as required by federal law.

Plaintiffs' claims are groundless.  First, with regard to how A.S. is identified at school, the issue is entirely moot as A.S. is no longer a student within the District.  Therefore, no present case or controversy exists for the Court to decide.  Second, Plaintiffs' Amended Complaint fails to allege that Ms. Willey has ever been required to utilize a student's name or pronoun that impacted her alleged religious beliefs in any fashion. The District is under no obligation to conform its policies and procedures to Ashley Willey's personal religious beliefs, or to adopt only policies and procedures of which Ashley Willey will approve.  Doing so would necessarily violate the Establishment Clause of the United States Constitution.  The District's obligation is only to reasonably accommodate its employees' religious beliefs and practices unless such practices constitute an undue burden. The Procedure adopted by the District for the 2023-24 school year and beyond expressly recognizes the District's obligation to accommodate employees' religious freedom. Thus, the procedure complies with all requirements of the law. Plaintiffs do not, and

cannot, allege that any situation has arisen wherein Ms. Willey's religious beliefs have not been reasonably accommodated as an employee. Therefore, Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## II.      LEGAL STANDARD

### A.      Standing Under Fed. R. Civ. P. 12(b)(1)

The exercise of federal judicial power is limited to "Cases" and "Controversies". *Colorado Env't Coal. v. Wenker*, 353 F.3d 1221, 1234 (10th Cir. 2004). "[T]he core doctrine of standing 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Id.* *(quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).* The party seeking to invoke federal jurisdiction bears the burden of establishing that they have standing to assert their claims. *Am. Forest & Paper Ass'n v. U.S. E.P.A.*, 154 F.3d 1155, 1158 (10th Cir. 1998). Three elements must be demonstrated to satisfy the minimum constitutional requirements of standing:

> First, the plaintiff must have experienced an injury in fact, that is, an invasion of a legally protected interest that is concrete and particularized and actual or imminent. Second, there must be a causal connection between the injury and the conduct complained of. Third, it must be likely, not speculative, that the injury will be redressed by the trial court's favorable decision. The plaintiffs have the burden of alleging facts establishing these three elements.

*Wenker,* 353 F.3d at 1234 (citations omitted).

A party may bring a motion to challenge a court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The objection that a federal court lacks subject matter jurisdiction may be raised by a party, or by the court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). The challenge can be either facial or factual. *White v. Lee*. 227 F.3d 1214, 1242 (9th Cir. 2000).

**B.    Fed. R. Civ. P. 12(b)(6)**

As the Supreme Court has explained, "plaintiffs are master of their complaints" and, through the content of those complaints, they must identify the legal basis of the claims they intend to pursue. *Webster v. Reproductive Health Svs.*, 492 U.S. 490, 492 (1989). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under the plausibility standard, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.  To survive this Motion, Plaintiffs' Complaint must contain fact allegations sufficient "to raise a right to relief above the speculative level" and "give the defendant fair notice of what [their claims are] and the grounds upon which [they] rest[]" for the particular legal claims they have chosen to pursue. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal citations and quotations omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 668. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 677-78.

A defendant may move to dismiss one or more causes of action for a complaint's failure, "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Associated Gen. Contrs. of Am. v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Fed. R. Civ. Pro. 8[1] "does not unlock the doors of discovery for a plaintiff armed

---

[1] Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The plausibility standard of *Iqbal* and *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Iqbal,* 556 U.S. at 679–81. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations fail to state a plausible claim for relief, the case should be dismissed. *Iqbal*, 129 S. Ct. at 1950.

## III.   ARGUMENT

"Although a determination of what is a 'religious' belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his [or her] own standards on matters of conduct in which society as a whole has important interests." *Wisconsin v. Yoder*, 406 U.S. 205, 215–16, 92 S. Ct. 1526, 1533, 32 L. Ed. 2d 15 (1972).  The premise of each of Plaintiffs' claims is fundamentally flawed in that they conflate disagreement with the Procedure with an infringement upon their Constitutional rights.  Such disagreements "should be addressed to elected policymakers at the ballot box, not to unelected judges in the courthouse."  *Parents 1 v. Montgomery Cnty. Bd. of Educ.*, No. 22-2034, 2023 WL 5184844, at *1 (4th Cir. Aug. 14, 2023) (attached hereto as Exhibit A).  The Procedure complies with the requirements of state and federal law and its adoption cannot give rise to a claim under 42 U.S.C. § 1983.

### A.      Plaintiffs Lack Standing to Bring Their Alleged Claims

#### 1.       *Plaintiffs' First Two Claims Are Moot*

A dispute is not a case or controversy if the plaintiff lacks standing. *Parents 1,* 2023 WL 5184844, at *3.  To invoke the jurisdiction of this Court an actual case or controversy must exist to be presented. *See Fischbach v. New Mexico Activities Association*, 38 F.3d 1159 (10th Cir. 1994). "To establish standing, 'a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *Parents 1,* 2023 WL 5184844, at *3 (quoting *TransUnion LLC v. Ramirez,* ⸺ U.S. ⸺, 141 S. Ct. 2190, 2203, 210 L.Ed.2d 568 (2021).  In other words, a plaintiff must have a sufficient "personal stake in the alleged dispute" and have a particularized injury that a court can remedy. *Id.* (citing *Raines v. Byrd*, 521 U.S. 811, 819, 117 S. Ct. 2312, 2317, 138 L. Ed. 2d 849 (1997)).

In the present case, Plaintiffs concede in their Amended Complaint that following meetings with the District's upper management the District agreed to refer to A.S. by the name on her birth certificate. [Doc. 26, ¶ 56]; *see also* [Doc. 16-3, ¶ 5].   On the face of their Amended Complaint, Plaintiffs brought an issue to the District's attention and achieved the result they were looking for. Plaintiffs fail to plausibly allege the deprivation of a right or a lack of due process. Plaintiffs' allegations establish that they were afforded all the process due under constitutional standards. They allege only a disagreement with the Procedure that does not implicate any right under federal law.  Plaintiffs' allegation that they are unhappy with the reason for the decision is immaterial. Plaintiffs' burden is to allege an actual or imminent harm.  They have not done so and cannot do so.

As of August 16, 2023, A.S. is no longer a student within the District. (Exhibit B, *Manzano High School Request for Records*; Exhibit C, *District Transfer Record*) (demonstrating A.S. has

6

transferred to a high school in New Mexico with her biological father.)[2]  Now that A.S. is no longer a student in the District, Plaintiffs have no legal standing to pursue their claims.  Having children who attend school within the District is not sufficient to allege an actual injury in fact. The injury-in-fact prong of the standing inquiry requires "either a current injury, a certainly impending injury, or a substantial risk of a future injury." *Parents 1*, 2023 WL 5184844, at \*4 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) ("An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical. An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.")

Now that A.S. is no longer a student within the District, Plaintiffs cannot allege a current injury, an impending injury, or a substantial risk of a future injury.  The potential that A.S., who was not referred to by any other name or by male pronouns at any time during the pendency of the present lawsuit [Doc. 16-3, ¶ 5] and is currently attending her last year of high school in another state, might someday return to school within the District, then request to be addressed by other names/pronouns, *and* the District would keep that information from Plaintiffs is nothing more than speculative fiction.  None of Plaintiffs' other children have made requests to the District under the Policy and there exists no allegation that they have or will.  Therefore, Plaintiffs lack standing to bring their first and second claims related to A.S.

Additionally, their first and second claims are moot, as plainly demonstrated by Exhibits B and C. *See Chihuahuan Grasslands All. v. Kempthorne,* 545 F.3d 884, 891 (10th Cir. 2008). The issue's mootness arises not from the District's voluntary conduct, but from the fact they no longer

---

[2] Notably, Plaintiff Ashley Willey has removed the prior allegation found in Plaintiffs' Complaint that she is the sole legal guardian of A.S.  [Doc. 1, ¶ 11]

have any input regarding A.S. whatsoever.  Therefore, Plaintiffs' first and second claims for relief should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

        2.     *Plaintiff Ashley Willey Lacks Standing to Bring Her Third and Fourth Claims*

Plaintiff's third and fourth claims for relief are specific to Ashley Willey's role as an employee within the District.  The essence of Ms. Willey's allegations in support of her second claim for relief is that she maintains sincerely held religious beliefs such that she denies the existence of transgender persons while believing in absolute parental authority and truth telling. [Doc. 26, ¶ 148]  In support of her third claim, Ms. Willey alleges that her sincerely held religious beliefs prevent her from using student's preferred names or withholding information from their parents. *Id.* ¶¶ 167, 171.  Yet Ms. Willey fails to identify any instance in which she has been asked to agree to use a student's chosen pronouns, subvert a parent's authority, or lie.  Nor can Ms. Willey identify any requirement within the Procedure such that she will ever be asked to do so. The bottom line is that Ms. Willey has never requested a reasonable accommodation based on her religious practice, has never been denied such accommodation, and it is unlikely that she ever will be denied such accommodation.

At the start of the 2023-24 school year, the District provided its staff with the "SCSD #1 Special Services Non-Negotiables" that include the Preferred/Chosen Names Procedure at issue in the present action.  The Procedure states as follows:

> 7.     Preferred/Chosen Names Procedure.  As you become acquainted with your students, you may encounter students wishing to use a preferred or chosen name. A preferred/chosen name is any name a student chooses to use other than their legal name. For example, a student may wish to shorten their first name (e.g., Steven to Steve, Samuel or Samantha to Sam) or to be referred to by their middle name or a nickname. Sweetwater County School District Number One is committed to promoting an educational environment that is supportive and respectful to all students. Calling a person by their preferred name and pronoun shows respect and contributes to the District's commitment to providing a safe and nondiscriminatory

educational environment.  Accordingly, staff must use a student's preferred/chosen name or pronoun in verbal, written, and electronic communications.

Pursuant to federal guidance interpreting Title IX of the Education Amendments of 1972, as well as Article I, § 2 of the Wyoming State Constitution, violations of this procedure may constitute discrimination based on sex and may result in discipline. Students who experience problems or discrimination related to their preferred/chosen name or pronoun shall be referred to the Title IX Coordinator for resources and assistance.  This procedure does not address changes to educational records to reflect name changes. Any requests to amend educational records shall be referred to the Director of Human Resources.

The procedure applies equally to all students regardless of their gender or sexual orientation. It is specific to student's preferred/chosen names and pronouns and is intended to further the district's goal of fostering a respectful and inclusive learning environment.  Wherever possible, staff should involve parents/guardians in the implementation of these guidelines to support the student's health, safety and well-being.  If the student has not informed their parent/guardian of their chosen name or pronoun, the student should be referred to the student's counselor who will partner with the student to encourage and support the student to discuss their chosen name or pronoun with their parent/guardian, unless the counselor or other staff member, in consultation with the District's Superintendent, Human Resources Director, and legal counsel determines that such disclosure would be detrimental to the student's health or safety.  When requesting a change to their preferred name and/or pronoun, students should be informed that in the absence of a determination that the student's health or safety is at risk, the District is legally required to share all information about the student's educational status, including chosen names and/or pronouns, with the student's parent/guardian upon request.  Because the procedure is content neutral, staff must not proactively contact parents regarding a student's chosen name and/or pronoun.  The District's policy is to respect a student's preference – not to either encourage or discourage any student from forming a preference as to chosen names or pronouns, which could be deemed discrimination based on sex as set forth above.

Staff members who are uncertain as to how to implement this procedure or are for any reason unable to implement the procedure in relation to specific, identified circumstance should address their concerns with the Human Resources Director. **The District will make every effort to reasonably accommodate staff members where possible.**

(Exhibit D, *Special Services Non-Negotiables,* pp. 1-2) (emphasis added)

Contrary to Ms. Willey's allegations, there is no "Parental Concealment Policy" [Doc. 26, ¶ 172]; she is not compelled to communicate any message, *Id.* ¶ 168; and her public discourse is

not in any way limited, *Id.* ¶ 167[3]. The Procedure is clear that staff are not supposed to lie to parents or withhold information unless the District's upper management in consultation with legal counsel deems the student's health or safety to be at risk – which is consistent with every policy or procedure adopted by the District. The safety of students is always paramount.

The Procedure is expressly content neutral and applies to all chosen names or nicknames without requiring, as Plaintiff alleges, staff to relate any message that "People can have a gender identity inconsistent with their sex at birth." [Doc. 26, ¶ 165] (The use of quotations in paragraph 165 of the Amended Complaint appears to be intended to give the impression the alleged quote is from the District or its staff. It is not.) Most significantly, the Procedure expressly allows for reasonable accommodation of staff members' beliefs whenever possible. The law requires nothing more.

In *Groff v. DeJoy*, 143 S. Ct. 2279 (2023), the United States Supreme Court clarified the requirements of reasonable accommodation of religious practice by employers in holding that when denying such accommodation an employer must show that the burden of providing an accommodation would result in substantial increased costs in relation to the conduct of its particular business. *Id.* at 2281. No legal requirement exists such that employers cannot adopt policies or procedures that run counter to the religious beliefs of one or more of their employees. Nor is there an absolute rule that the adoption of policies or procedures counter to an employee's religious beliefs violates the Constitution. The employer's legal obligation is only to reasonably accommodate its employees' religious practices unless doing so would result in substantial increased costs.

---

[3] Despite Plaintiff's repeated claims of being an inveterate truth teller, her allegations are frequently demonstrably false.

Plaintiff does not, and cannot, allege the District has refused – or would ever refuse - to accommodate her religious beliefs when the Procedure expressly requires such accommodation where possible. The Procedure expressly guarantees Ms. Willey will be afforded every right outlined under the holding in *Groff*. Therefore, Ms. Willey cannot plausibly allege she has been actually denied a right secured by the Constitution or federal law. In the absence of such allegations, Ms. Willey cannot plausibly allege an actual legal injury and lacks standing to bring her third and fourth claims which should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).

**B.     Even if Ms. Willey Had Standing to Bring Her Claims, She Fails to State Any Claim Upon Which Relief May Be Granted Because the District is Required to Follow State and Federal Law.**

It is unnecessary to address the purported merits of Plaintiffs' first and second claims for relief as they lack standing to bring such claims and/or the claims are moot in light of the fact that A.S. is no longer a student in the District. Therefore, this section addresses only Ms. Willey's third and fourth claims for relief.

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that he or she was deprived of a right secured by the Constitution or federal law; and (2) that the deprivation occurred under the color of state law. *Am. Mfrs. Mut. Ins. v. Sullivan,* 526 U.S. 40, 49 (1999). Plaintiffs cannot meet that burden.

All of Plaintiffs' Section 1983 claims arise from perceived conflicts with the Procedure. As set forth above, the Procedure requires only that staff show respect and work toward an inclusive, non-discriminatory educational environment by using students' preferred names and pronouns. The District's interpretation that violating the Procedure *may* constitute discrimination based on sex is consistent with state and federal law. Although the Procedure is neutral in content and generally applicable to all District staff, the Procedure is neither coercive nor compulsory. *See*

11

*Bauchman v. W. High Sch.,* 132 F.3d 542, 557 (10th. Cir. 1997).  It expressly provides that reasonable accommodations will be provided where possible which is all that is required under *Groff,* 143 S. Ct. 2279.  Nor does the Procedure impact Ms. Willey's speech in any public setting. Ms. Willey has given numerous media interviews regarding the case without repercussion.

In 2020, the United States Supreme Court decided in *Bostock v. Clayton Cnty., Georgia*, 207 L. Ed. 2d 218, 140 S. Ct. 1731, 1740 (2020) that discrimination based on sexual preference or gender identity is discrimination "because of sex" that violates Title VII. *Id.* 1741-42.  The *Bostock* Court stated, "it is impossible to discriminate against a person for being ... transgender without discriminating against that individual based on sex." *Id*. at 1741.  The *Bostock* Court did not limit its holding to Title VII, or the employment context, or otherwise. "Impossible" applies to all situations and scenarios. For example, continuously misgendering a transgendered teacher, in addition to threats and name calling, constituted harassment based on sex. *See Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154 (D. Md. 2022).

Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §1681 *et seq.* prohibits discrimination on the basis of sex in educational settings. The United States Department of Education published its interpretation applying the *Bostock* decision to Title IX. *See* 86 Fed. Reg. at 32,637 [Doc. 16-7].  That interpretation is consistent with Supreme Court precedent. *See Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581, 617, 119 S. Ct. 2176, 2195, 144 L. Ed. 2d 540 (1999) ("This Court has also looked to its Title VII interpretations of discrimination in illuminating Title IX of the Education Amendments of 1972.")

The President of the United States has issued Executive Orders 13988 "Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation" [Doc. 16-5] and 14021 "Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex,

12

Including Sexual Orientation or Gender Identity" [Doc. 16-6] expressly forbidding discrimination based on gender identity or sexual orientation. Executive Orders are to be "accorded the force and effect given to a statute enacted by Congress." *Farkas v. Texas Instrument, Inc.*, 375 F.2d 629, 632 (5th Cir. 1967).

Further, Article I, § 3 of the Wyoming Constitution prohibits discrimination based on "any circumstance or condition whatsoever other than individual competency, or unworthiness duly ascertained by a court of competent jurisdiction. The Wyoming Constitution goes even further than the United States Constitution in prohibiting discrimination in any form: "Considering the state constitution's particular call for equal protection, the call to recognize basic rights, and notion that these particular protections are merely illustrative, the Wyoming Constitution is construed to protect people against legal discrimination more robustly than does the federal constitution." *In re Neely*, 2017 WY 25, ¶ 48, 390 P.3d 728, 744 (Wyo. 2017) (citing *Johnson v. State Hearing Examiner's Office*, 838 P.2d 158, 165 (Wyo. 1992)).

It is against this legal backdrop that the District adopted the Procedure. The District is not permitted to discriminate against any student based on sexual orientation or gender identity. As expressly stated in the Procedure, respecting student choice includes shortening a student's preferred name from Steven to Steve. Similarly, it includes shortening Samuel to Sam. Or Samantha to Sam. However, in that latter circumstance Plaintiffs would have the District inquire into Sam's gender identity and not respect his or her wishes based on the sex they were assigned at birth[4]. As the Supreme Court held in *Bostock,* it would be *impossible* to do so without discriminating against that student on the basis of sex.

---

[4] Plaintiffs may argue that their prayer for relief is limited to their own children. However, creating a procedure whereby any family can simply opt out of the requirements of federal law is

"The First Amendment ... gives no one the right to insist that in pursuit of their own interests others must conform their conduct to his own religious necessities." *In re Neely*, 2017 WY 25, ¶ 37, 390 P.3d 728, 741 (Wyo. 2017) (quoting *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 710, 105 S.Ct. 2914, 2918, 86 L.Ed.2d 557 (1985)). The Procedure at issue is content neutral and accurately reflects the current requirements of state and federal law. The Procedure is necessary to comply with governing state and federal law and the District cannot be enjoined from following the mandates of those laws.  Therefore, Plaintiff's claims must be dismissed for failure to state a claim upon which relief may be granted.

### C.   Ms. Willey Does Not Plausibly Allege an Infringement Upon Her Right of Free Exercise of Religion

Plaintiffs' third cause of action fails as a matter of law. Even assuming as alleged that Ms. Willey  "ha[s] sincerely held religious beliefs that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed" [Doc 1, ¶ 103], she fails to plausibly allege that belief has been in any way restricted by the Defendants' conduct.  Ms. Willey is free to exercise her religion.  She is not free to restrict the religious rights of others in furtherance of their religious beliefs. "[T]he Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can extract from the government." *Bowen,* 476 U.S. at 700, 106 S.Ct at 2152 (quoting *Sherbert v. Verner*, 374 U.S. 398, 412, 83 S.Ct. 1790, 1798, 10 L.Ed.2d 965 (1963)).

The Procedure is not excessively entangled with any one religion – or any religion. It does not impact anyone's private religious conduct.  Therefore, it does not hinder Plaintiffs' right to free exercise of religion. "The Free Exercise Clause affords an individual protection from certain

tantamount to invalidating the law altogether. Title IX applies to all students and families, including Plaintiffs.

forms of governmental compulsion; it does not afford an individual a right to dictate the conduct of the Government's internal procedures." *Bowen,* 476 U.S. at 700, 106 S.Ct. at 2152. Ms. Willey's attempt to use the Free Exercise Clause as a sword rather than a shield is in contravention of established Constitutional principles and controlling law. Therefore, Ms. Willey's third cause of action should be dismissed under Fed. R. Civ. P. 12(b)(6).

>    1.    *Ms. Willey Fails to Plausibly Allege Her Free Exercise of Religion Is, or Could Be, Restricted Through Compliance With the Procedure.*

Ms. Willey alleges that the speculative potential that she might someday be asked to refer to a student by their preferred pronouns or withhold certain information from parents is a violation of her free expression of religion. Issues of standing aside, Ms. Willey cannot state a plausible claim for relief.

"An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but it is not required to incur undue hardship." *Horvath v. City of Leander*, 946 F.3d 787, 791 (5th Cir. 2020), as revised (Jan. 13, 2020) (quoting *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000)). An employee has a duty to cooperate in achieving accommodation of his or her religious beliefs and must be flexible in achieving that end. *Bruff v. N. Mississippi Health Servs., Inc.*, 244 F.3d 495, 503 (5th Cir. 2001). Here, Ms. Willey fails to allege she has requested any reasonable accommodation or that such accommodation has been denied.

Courts have traditionally rejected claims of reasonable accommodation that require employers to excuse employees from performing their essential job duties. *See Miller v. Davis,* 123 F. Supp. 3d 924, 944 (E.D. Ky. 2015), vacated on other grounds, No. CV 15-44-DLB, 2016 WL 11695944 (E.D. Ky. Aug. 18, 2016). Ms. Willey is an employee and not the sole member of a limited liability company such that *303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023) applies.

The binding precedent is that of *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) and *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006) as recently interpreted by the Court in *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 213 L. Ed. 2d 755 (2022).

In *Kennedy,* the Court held that a high school football coach had the right to silently pray by himself following games.  The Court applied the strict scrutiny analysis because the school's prohibition on the post-game prayer was specifically directed at religious practice. *See Kennedy*, 142 S. Ct. at 2422. The Court expressly distinguished the coach's private practice from the unbounded right of school employees "to deliver any message to anyone anytime they wish." *Id.* at 2423.  In balancing the interplay between free speech rights and public employment, the Court referenced the *Pickering-Garcetti* two-part framework, holding:

> The first step involves a threshold inquiry into the nature of the speech at issue. If a public employee speaks "pursuant to [his or her] official duties," this Court has said the Free Speech Clause generally will not shield the individual from an employer's control and discipline because that kind of speech is—for constitutional purposes at least—the government's own speech. *Id.*, at 421, 126 S.Ct. 1951.
>
> At the same time and at the other end of the spectrum, when an employee "speaks as a citizen addressing a matter of public concern," our cases indicate that the First Amendment may be implicated and courts should proceed to a second step. *Id.*, at 423, 126 S.Ct. 1951. At this second step, our cases suggest that courts should attempt to engage in "a delicate balancing of the competing interests surrounding the speech and its consequences." Ibid. Among other things, courts at this second step have sometimes considered whether an employee's speech interests are outweighed by " 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id*., at 417, 126 S.Ct. 1951 (quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731).

*Id.* at 2423-24.

Here, the Procedure is specific to employees' provision of special services to students and does not implicate the second step of the *Pickering-Garcetti* framework.  The Procedure requires only that employees respect student's choices regarding preferred names and pronouns. It is not

16

directed at any one religion or religion generally.  If the student seeking respectful use of names or pronouns raises safety concerns, they are to be referred to District staff capable of addressing those concerns.  If any individual employee believes they cannot comply with the Procedure, the District will work with them to find a reasonable accommodation.  It is only when such accommodation cannot be made due to the substantial additional costs incurred that the *Pickering-Garcetti* framework would apply.  In that extraordinarily rare hypothetical circumstance, the law would require the employee to conform their speech to that required under Title IX, the Wyoming Constitution, and the authority of Executive Orders that the District is powerless to override.  It is reasonable for the District to expect its employees to follow the Procedure as written because in such circumstances their speech is the District's own speech. *See Kennedy,* 142 S. Ct. at 2423.

""It is not unreasonable for [a school] to expect that its instructors will teach classes in a professional manner that does not distress students." *Smiley v. Columbia Coll. Chicago*, 714 F.3d 998, 1002 (7th Cir. 2013)).  Similarly, it is not unreasonable for the District to expect that Ms. Willey will teach classes in a professional manner that does not distress students.  The District has an obligation under the Wyoming Constitution to provide an education to all students. Wyo. Const. art. I, § 23.  In fact, the Wyoming Constitution expressly bars sectarian instruction or favoring of any sectarian tenets in its schools. Wyo. Const. art. 7, § 12.  Ms. Willey is asking this Court to require the District favor a sectarian tenet over the rights of students to attend school in a safe and inclusive environment that respects their right to an identity as guaranteed by Title IX, multiple Executive Orders, common law, and the Wyoming Constitution. Her alleged cause of action must be dismissed.

Ms. Willey's right to free exercise of religion is not limitless. As held by the United States Supreme Court, the First Amendment safeguards the free exercise of religion in two aspects – the

17

freedom to believe and the freedom to act. "The first is absolute but, in the nature of things, the second cannot be." *Cantwell v. State of Connecticut*, 310 U.S. 296, 303–04, 60 S. Ct. 900, 903, 84 L. Ed. 1213 (1940). Considerations of student well-being and safety must take precedence. Ms. Willey's right to believe whatever she wishes is absolute, but it does not and cannot override the student's right to equal protection, education, and the right to be free from mental and physical abuse. Just the threat of Ms. Willey exposing a student's identity would have a chilling effect on that expression in contradiction of the rights guaranteed them under Title IX, other federal law, and the Wyoming Constitution. Contrary to Ms. Willey's allegations, the Free Exercise Clause does not give her the right to impose her beliefs upon others or to alter District procedure. Therefore, Ms. Willey's third cause of action should be dismissed.

> 2.      *Ms. Willey's Fourth Cause of Action Fails to Plausibly State a Claim of a First Amendment Violation.*

Ms. Willey fails to allege a single instance where her freedom of speech has ever been restricted by any Defendant. Additionally, Ms. Willey's fourth alleged cause of action is inherently contradictory. As the United States Supreme Court held in *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 506 (1969), "It can hardly be argued that **either students or** teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. *Id.* (emphasis added). Requiring students to shed their constitutional right to free expression is exactly what Ms. Willey is asking this Court to mandate.

Plaintiffs' Amended Complaint does not seek limited relief wherein she will only use student's requested pronouns if their parents agree, or if a doctor approves, or where the student's safety has been assured. She is asking for a declaration that under no circumstances will she ever be required to follow the District's Procedure. [Doc. 26, pp. 41-43] Ms. Willey's prayer for relief makes no accommodation for the Constitutional right of expression of anyone but herself. Ms.

18

Willey makes no allowance for the possibility that the speech she seeks the freedom to make could place students in harm's way. She leaves no room for consideration of any parent's wishes other than her own. She fails to consider the student's right to First Amendment expression of their true identity.  Per the allegations of Ms. Willey's Amended Complaint, the District should not consider the First Amendment rights of anyone but her, when her First Amendment rights are not implicated as a matter of law. The statements she is permitted to make within her role as a public employee are indisputably subject to regulation by her employer.

When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 1960, 164 L. Ed. 2d 689 (2006). "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.*

Here, the speech at issue is indisputably part of Ms. Willey's employment in carrying out her professional responsibilities as a teacher.  The District has an obligation to provide a quality, safe, and respectful learning environment for all of its students. It has adopted the Procedure, in accordance with Title IX and accompanying federal guidance, to achieve that end.  It has the right to expect its employees to follow the Procedure, which does not implicate Ms. Willey's First Amendment rights as a matter of law.  Therefore, Ms. Willey's fourth cause of action fails to state a claim upon which relief may be granted.

IV.    **CONCLUSION**

No case or controversy exists in the present action.  Therefore, Plaintiffs do not have standing and the case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Additionally, the Procedure not only complies with federal law, it is required by federal law.  The District is not free to disregard federal law, or the Wyoming Constitution, based on the Plaintiffs' religious beliefs.

Plaintiffs are free to believe anything that they want. No allegation of the Amended Complaint plausibly alleges that right has been restricted or impaired.  Plaintiffs do not have the right to dictate District procedure or require any Defendants' individual or collective conduct to conform to their religious beliefs.  Individuals do not have the right to choose which federal laws apply to them.  If the law is not of general applicability then it isn't a law at all.

The expectation that a District employee will follow her employer's federally mandated procedure is not a restriction of any recognized federal right held by Ms. Willey. The District follows state and federal law requiring reasonable accommodation for religious freedoms, but Ms. Willey has never been asked to violate her religious beliefs by referring to any particular student by chosen names or preferred pronouns, nor has she requested or been denied any such accommodation.  Plaintiffs have not stated any claim upon which relief may be granted.

WHEREFORE, Defendants respectfully request his Court dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and grant such further relief as the Court deems just under the circumstances.


Dated this 17th day of August 2023.

s/ *L. Kathleen Chaney*
L. Kathleen Chaney, #6-3211
Eric D. Hevenor, #6-4435
LAMBDIN & CHANEY, LLP
4949 South Syracuse Street, Suite 600
Denver, CO 80237
(303) 799-8889
(303) 799-3700 (facsimile)
Email:  kchaney@lclaw.net
       ehevenor@lclaw.net
*Attorneys for Defendants Sweetwater County School District #1 Board of Trustees and Sweetwater County School District #1, Individually*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August 2023, a true and correct copy of the foregoing **DEFENDANTS MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** was filed with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

Henry F. Bailey Jr., #5-1681
Bailey Stock Harmon Cottam Lopez LLP
6234 Yellowstone Road
Cheyenne, WY 82009
Telephone: (307)-638-7745
hank@performance-law.com
*Counsel for Plaintiffs*


Ernest G. Trakas (MO) #33813
Mary E.:McAlister* (VA) #76057
Vernadette R. Broyles* (GA) #593026
CHILD & PARENTAL RIGHTS CAMPAIGN
5805 State Bridge Road, Suite 310
Johns Creek, GA 30097
Telephone (770) 448-4525
etrakas@childparentrights.org; mmcalister@childparentrights.org
vbroyles@childparentrights.org
* Pending Admission *Pro Hac Vice*


*Printed copy with original signature on file at the office of Lambdin & Chaney, LLP*


s/ *L. Kathleen Chaney*
L. Kathleen Chaney, #6-3211
Eric D. Hevenor, #6-4435
LAMBDIN & CHANEY, LLP
4949 South Syracuse Street, Suite 600
Denver, CO 80237
(303) 799-8889
(303) 799-3700 (facsimile)
Email:  kchaney@lclaw.net
        ehevenor@lclaw.net
*Attorneys for Defendants Sweetwater County School District #1 Board of Trustees and Sweetwater County School District #1, Individually*