L. Kathleen Chaney, #6-3211
Eric D. Hevenor, #6-4435
Lambdin & Chaney, LLP
4949 S. Syracuse St., Ste 600
Denver, CO 80237
TEL: (303)-799-8889
E-mail: kchaney@ lclaw.net; ehevenor@lclaw.net

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| ASHLLEY WILLEY, SEAN WILLEY<br>Plaintiffs<br><br>vs.<br><br>SWEETWATER COUNTY SCHOOL DISTRICT # 1 BOARD OF TRUSTEES, et al.,<br>Defendants | Civil Case No. 23-cv-69-S |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants, by and through their attorneys, Lambdin & Chaney, LLP, hereby Reply in Support of Motion to Dismiss, stating as follows:

**I.    INTRODUCTION**

Plaintiffs allege four claims under 42 U.S.C. § 1983. In order to state a claim under Section 1983, Plaintiffs must plausibly allege a deprivation of a federally protected right under color of law. *See Gomez v. Toledo,* 466 U.S. 635 (1980). Plaintiffs have clearly failed to adequately allege such a deprivation and therefore dismissal is appropriate under Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

Plaintiffs' first two claims arise from speculative allegations that at some point during the 2021-22 school year their child, referred to herein as A.S., was referred to by school staff by a name and pronouns that do not match her birth certificate. Plaintiffs allege they first brought the issue to the District's attention through an email on March 29, 2022. [Doc. 26, ¶ 41] Plaintiffs

1

further allege that at some point in April 2022 the District stopped referring to A.S. by names and pronouns different than those on her birth certificate. [Doc. 1, ¶ 39] Notably, Plaintiffs allege that the District adopted a non-negotiable procedure regarding the use of student names and pronouns on August 15, 2022 – more than four months after Plaintiffs concede the District stopped referring to A.S. by anything other than the names and pronouns stated on her birth certificate. No dispute exists that A.S. is no longer a student in the District. Plaintiffs fail to allege any time where they were allegedly deprived of any federally protected right under the color of law, nor can they plausibly allege such deprivation may take place in the future. Therefore, Plaintiffs lack standing to bring their first two Section 1983 claims.

Similarly, Plaintiffs' third and fourth claims arise from an illusory deprivation that has not occurred and will not occur. Ms. Willey, as a teacher in the District, is subject to the non-negotiable preferred names procedure. However, Ms. Willey fails to plausibly allege that she has ever actually been in a situation where she has been asked to refer to a student by names or pronouns other than the ones on their birth certificate. Ms. Willey's allegations are based on a flawed understanding of the former procedure that has since been clarified in the language of the presently active procedure such that no risk exists that Ms. Willey would or could be deprived of a federally protected right without reasonable accommodation.

Plaintiffs are impermissibly seeking an advisory opinion from this Court regarding the Procedure itself but have not and cannot allege an actual deprivation of their rights. The Procedure didn't exist at the time giving rise to Plaintiffs' first two Section 1983 claims and has never impacted anything in relation to their third and fourth claims. Therefore, Plaintiffs' claims fail as a matter of law and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

## II.   ARGUMENT

### A.   Plaintiffs' Allegations Do Not Establish an Actual or Imminent Harm

To establish standing, Plaintiffs must demonstrate: (1) an invasion of a legally protected interest which is (a) concrete and particularized; (b) "actual or imminent, not 'conjectural' or 'hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (internal citations omitted); (2) a causal connection between the injury and the conduct complained of; and (3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Any alleged harm under Section 1983 must occur under the color of law, i.e., after the SCSD#1 Special Services Non-Negotiable procedure (the "Procedure") was adopted on August 25, 2022. In their Response, Plaintiffs concede that A.S. no longer attends school within the District.  Therefore, currently no actual or imminent harm can possibly be alleged.  Plaintiffs have not alleged past harm under Section 1983.  They allege only that they were somehow injured by a nonexistent "Parent Concealment Policy" that could not have existed at the time they allege A.S. was called by the wrong name.  Plaintiffs fail to plausibly allege any injury befell them under the color of law after August 25, 2022. Therefore, their claims are rendered moot by the fact A.S. no longer attends school in the District.  In the absence of any factual basis for alleging an actual or imminent harm, Plaintiffs lack standing to bring their first and second claims for relief.

> 1.   *Plaintiffs Cannot Plausibly Allege a "Parent Concealment Policy" Existed*

Plaintiffs reference an imaginary "Parent Concealment Policy" sixteen times in their Amended Complaint. [Doc. 26, ¶ 49, 55, 68, 94, 96, 114, 116, 120, 121, 134, 135, 136, 137, 172, 174]  These references to a nonexistent policy contradict their own alleged facts. The facts alleged in the present action are that Ms. Willey discovered on March 29, 2022 that A.S. had been using a name and/or pronouns at school different than those on her birth certificate, *Id.* ¶ 30. Upon

becoming aware of A.S.'s choice she asked two teachers from her school if they knew her daughter. *Id.* ¶¶ 32-35. The first teacher responded that she knew A.S. and described her as a sweet girl. *Id.* ¶ 32. The second teacher did not recognize A.S. by name but did recognize her picture wherein he immediately stated that he knew her by a different name. *Id.* ¶ 33. Both teachers agreed that they had been referring to A.S. by a different name since the beginning of the school year. *Id.* ¶ 35. Notably, Plaintiffs do not allege Ms. Willey asked either teacher if A.S. identified as a boy or had been using a different name. The teachers volunteered that information upon seeing a picture of A.S. Thus, the Amended Complaint fails to plausibly allege Plaintiffs were ever actively deceived by any member of the District or the District's staff – regardless of the existence of any District policy or procedure.

Further, the entire interaction described in Plaintiffs' Amended Complaint occurred on March 29, 2022 – nearly five months before the Procedure was adopted by the District. *Id.* ¶¶ 31, 61. Nothing in the Procedure requires or requests any District staff deceive any parent. [Doc. 26-6; Doc. 30-4] In fact, as alleged in the Amended Complaint, District Superintendent Kelly McGovern sent an email with additional guidance regarding the Procedure stating that District staff were "never directed not to talk to parents or to lie to parents." [Doc. 26, ¶ 71] Ms. McGovern's email does carve out an exception for situations where revealing a student's confidential information to a parent constituted a "particularized and substantiated concern of real harm to the student." *Id.* ¶ 72. (stating "the District will honor a student's request for confidentiality until the student consents to the disclosure and/or the District completes an individualized assessment and rules out any particularized and substantiated concern of real harm to the student.")

In a prior Order, this Court noted that the use of the disjunctive "and/or" made the Procedure[1] ambiguous. [Doc. 24, p. 28, fn. 11]  The intent of the use of the disjunctive in Ms. McGovern's email had been to establish a process where a student could raise a safety concern *and* the District therefore assessed the situation and substantiated a real possibility of harm *or* the District had already made a determination of the threat of harm prior to withholding information and taking other actions as required by law. It was never the District's intent to leave the decision solely to a student's discretion. With the Court's guidance in mind, the District revised the Procedure prior to the 2023-24 school year such that the only circumstances where information may potentially be withheld from parents are when the District has determined a real and substantiated threat of student harm is present. [Doc. 30, pp. 8-9]  This is in keeping with **all** District policies and procedures.  As mandatory reporters of abuse the primary focus is always is to preserve student safety.

No "Parent Concealment Policy" has ever existed within the District and Plaintiffs have failed to plausibly allege the existence of such a policy.  Both the 2022-23 Procedure [Doc. 26-6] and the 2023-24 Procedure [Doc. 30-4] are part of the record subject to the Court's review. No language contained in the Procedure requires District staff to ever deceive parents for any reason. Plaintiffs' inchoate beliefs about what they think or speculate the Procedure intends are nothing more than "labels and conclusions" without supporting factual allegations that the United States Supreme Court held are insufficient to state a claim for relief in both *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Considering the actual language of the Procedure and the explicit guidance of Superintendent McGovern that staff were never directed not to talk to parents or to lie to parents, Plaintiffs cannot plausibly allege

---

[1] The SCSD#1 Non-Negotiables Procedure is not an official policy of the District.

the existence of a fictional Parent Concealment Policy. In the absence of such a policy, Plaintiffs fail to allege they have incurred an actual past harm and lack standing to bring a claim for compensatory damages for any alleged past harm.

2. *Failure to Allege An Actual Harm Occurred Under Color of State Law*

To recover under Section 1983, a plaintiff must show "that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). The state action element in Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). When addressing whether a private party acted under color of law, the court, "starts with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). Individual conduct cannot give rise to a Section 1983 action.

As set forth above, virtually all of the conduct Plaintiffs allege was objectionable occurred *prior to* the adoption of the Procedure. On August 15, 2022, the Procedure was adopted in response to the uncertainty surrounding A.S.'s situation in order for the District to provide guidance to staff regarding compliance with Title IX as interpreted by Executive Orders 13988 "Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation" [Doc. 16-5] and 14021 "Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity" [Doc. 16-6] expressly forbidding discrimination based on gender identity or sexual orientation.

Prior to the adoption of the Procedure, Plaintiffs allege only that two teachers volunteered all relevant information regarding A.S. upon being asked if they recognized her. [Doc. 26, ¶¶ 32-35] That is not "concealment" under any definition. Plaintiffs fail to cite any law or standard

establishing that the District has an affirmative legal duty to seek them out and inform them of every decision their child makes at school. No such law exists. Indeed, it is inherently discriminatory for a school to single out any student for disparate treatment based on race, religion, sexual identity, or gender preference. *See Bostock v. Clayton Cnty., Georgia,* 207 L. Ed. 2d 218, 140 S. Ct. 1731, 1740 (2020).

School districts are not enforcement mechanisms for privately held beliefs. For example, one assumes a Hindu parent would *like* to know if their child were eating hamburgers at the school cafeteria in violation of their sincerely held religious beliefs, but it would be both a violation of the student's right to free speech/expression and their freedom of religious expression to single them out for such reporting when their conduct does not violate any rule or law. Similarly, being transgender is not against any school rule, is not against any law, and is not a psychiatric condition. *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594 (4th Cir. 2020); *Foote v. Town of Ludlow*, No. 22-30041-MGM, 2022 WL 18356421, at *5 (D. Mass. Dec. 14, 2022); *Doe by and through Doe v. Boyertown Area Sch. Dist.*, 276 F .Supp.3d 324, 367 (E.D. Penn. 2017). No law requires the active disclosure of all student information to parents prior to a request for information being made. Students do not "shed their constitutional rights to freedom of speech of expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503,506 (1969).

It is neither the duty, nor the right, of the District or its staff to take the role of thought police or informants who must actively inquire into parents' religious beliefs to ensure students comply with those privately held beliefs while at school. Even if the allegations of the Amended Complaint are true, no recognized right possessed by Plaintiffs was potentially violated because District staff failed to actively seek out Plaintiffs to inform them A.S. chose to use a different name at school. Such a notion is genuinely Orwellian.

Following Ms. Willey's March 29, 2022 discovery of A.S.'s chosen name, Plaintiffs allege only that within twenty-four hours A.S.'s principal emailed to say he would reach out to Human Resources for guidance regarding the then-novel situation. [Doc. 26, ¶ 43; Doc. 26-2]. Ms. Willey then instructed A.S. to inform the school she wanted to be referred to by her birth name. [Doc. 26, ¶ 45]. Following A.S.'s request, the District respected her wishes and referred to her by her birth name. [Doc. 16-3, ¶ 4] That fact was confirmed to Plaintiffs by Superintendent McGovern. [Doc. 1, ¶ 39] Thus, the entirety of Plaintiffs allegations are that they learned their child was using a name other than her birth name at school, they asked her to stop, and the school respected that choice. Plaintiffs fail to allege a legally cognizable injury as a basis for legal standing.

Plaintiffs' allegations following adoption of the Procedure also fail to allege a harm under color of law. Plaintiffs' allegation that "by happenstance" Ms. Willey has learned that three unnamed teachers referred to A.S. as a boy during the 2022-23 school year is nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" soundly rejected by the Court in *Iqbal*. *See Iqbal*, 556 U.S. at 678. Even if true, the allegation would only prove that certain teachers acted outside the scope of the Procedure by failing to honor A.S.'s request she be referred to by her given name at birth. [Doc. 26, ¶ 45] Thus, Plaintiffs fail to allege the conduct occurred under the color of law as required to state a claim under Section 1983. Plaintiffs cannot plausibly allege the District interfered with any right they may possess and fail to allege that any such interference occurred under the color of law.

Plaintiffs fail to allege injuries sufficient to establish legal standing. The Procedure itself is a content-neutral requirement that District staff use whatever name students ask to use – for whatever reason the student may have for doing so. No plausible allegation of harm – past, present,

or future – is found in Plaintiffs' Amended Complaint.  Therefore, Plaintiffs lack standing to bring their first and second claims for relief.

### B.     Ms. Willey Lacks Standing to Bring Her Third and Fourth Claims

Nothing in Plaintiffs' Response contradicts the following statement at Doc. 30, p.8:

> Ms. Willey fails to identify any instance in which she has been asked to agree to use a student's chosen pronouns, subvert a parent's authority, or lie. Nor can Ms. Willey identify any requirement within the Procedure such that she will ever be asked to do so.

Ms. Willey has never been subject to employee discipline or demotion in relation to the Procedure.  No student she has ever taught has ever requested to use anything other than their legal name based on gender identity. [Doc. 16-3, ¶ 9]  Based on the plain language of the Procedure, should that situation ever arise the District will make every effort to accommodate her religious beliefs. [Doc. 30-4, p. 2]  Ms. Willey cannot allege she has ever been harmed under the Procedure.  Nor can she plausibly allege she ever will be harmed when the Procedure explicitly requires reasonable accommodation of her beliefs which is all she is entitled to as a matter of law. *See Groff v. DeJoy,* 143 S. Ct. 2279 (2023).  In the absence of alleged harm, Ms. Willey lacks standing. Therefore, her third and fourth claims fail under Fed.R.Civ.P. 12(b)(1).

### C.     A Claim for Failure of Religious Accommodation Cannot Plausibly be Stated when the Procedure Expressly Provides for Religious Accommodation.

The Procedure is a content neutral, non-coercive directive to District staff to respect all student's choice of name as required by federal law.  In the exceedingly rare event that a staff member might find themselves unable to comply with the Procedure it allows them to raise any concerns with the District's Human Resources Director so that every effort at reasonable accommodation can be made. [Doc. 30-4]

Plaintiffs cannot plausibly allege the Procedure as written infringes upon Ms. Willey's rights. In their Response they simply invent policies that don't exist, e.g. "The Policy compels

Mrs. Willey, a District employee, to accede to a child's wishes to socially transition as the opposite sex at school without notifying parents. The Policy requires that teachers, such as Mrs. Willey must lie to parents and disregard biological reality if they want to keep their jobs." [Doc. 38, p. 14] Nothing in the Procedure refers in any fashion to social transitioning, nor does it require anyone to lie to parents, hold any position as to "biological reality" or state or imply that termination from employment may result for Ms. Willey or anyone else.

Plaintiffs also cite *Ricard v. USD 475 Geary Cnty., KS Sch. Bd.*, No. 522CV04015HLTGEB, 2022 WL 1471372 (D. Kan. May 9, 2022) which is informative due to the clear distinctions it presents. First, the *Ricard* decision involves only injunctive relief. The *Ricard* school district suspended a teacher for failing to use students' chosen pronouns under a policy that was not generally applicable to all staff and conditioned sharing information with parents solely upon the student's request. The *Ricard* Court denied injunctive relief in relation to the preferred names and pronouns policy finding that the teacher was unlikely to be subject to discipline but granted injunctive relief regarding the withholding of information from parents without proof of a genuine risk to student safety.

Here, Ms. Willey has never been confronted with the issue of addressing a student by an alternate name or pronoun due to gender identity and has never been subject to discipline under the Procedure. In contrast to *Ricard,* the District's Procedure does not permit withholding information from parents based solely on a student's request. Nor is it likely that Ms. Willey would ever be subject to discipline under the Procedure which expressly guarantees reasonable accommodation of staff's religious beliefs. The law does not require that the District conform its procedures to Ms. Willey's religious beliefs.  It requires only that it provide her reasonable accommodation for them.  When and if the situation ever arises, the Procedure guarantees Ms.

10

Willey's rights will be protected. Therefore, Plaintiffs fail to state claims upon which relief may be granted under Fed.R.Civ.P. 12(b)(6).

### III. CONCLUSION

Plaintiffs lack standing to bring their claims because they fail to plausibly allege an actual deprivation of any right under color of law. The District's content neutral Procedure expressly guarantees Plaintiffs' religious beliefs will be accommodated which is all the law requires.

WHEREFORE, Defendants respectfully request his Court dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and grant such further relief as the Court deems just under the circumstances.

Dated this 9th day of October 2023.

s/ *L. Kathleen Chaney*
L. Kathleen Chaney, #6-3211
Eric D. Hevenor, #6-4435
LAMBDIN & CHANEY, LLP
4949 South Syracuse Street, Suite 600
Denver, CO 80237
(303) 799-8889
(303) 799-3700 (facsimile)
Email:  kchaney@lclaw.net
            ehevenor@lclaw.net
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 9th day of October 2023, a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** was filed with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

Henry F. Bailey Jr., #5-1681
Bailey Stock Harmon Cottam Lopez LLP
6234 Yellowstone Road
Cheyenne, WY 82009
Telephone: (307)-638-7745
hank@performance-law.com
*Counsel for Plaintiffs*

Ernest G. Trakas (MO) #33813
Mary E. McAlister* (VA) #76057
Vernadette R. Broyles* (GA) #593026
CHILD & PARENTAL RIGHTS CAMPAIGN
5805 State Bridge Road, Suite 310
Johns Creek, GA 30097
Telephone (770) 448-4525
etrakas@childparentrights.org; mmcalister@childparentrights.org
vbroyles@childparentrights.org
* Pending Admission *Pro Hac Vice*

                                      *Printed copy with original signature on file at the office of Lambdin & Chaney, LLP*

                                      s/ *L. Kathleen Chaney*
                                      L. Kathleen Chaney, #6-3211
                                      LAMBDIN & CHANEY, LLP