

**FILED**

*3:55 pm, 12/18/23*

**Margaret Botkins**
**Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

---

| | |
|---|---|
| ASHLEY WILLEY and SEAN WILLEY, | |
| Plaintiffs, | |
| VS. | Case No.  23-CV-0069-SWS |
| SWEETWATER COUNTY SCHOOL DISTRICT #1 BOARD OF TRUSTEES; KELLY MCGOVERN, Superintendent of Sweetwater County School District #1, NICOLE BOLTON, Assistant Superintendent & Human Resources Director of Sweetwater County School District #1, KAYCI ARNOLDI, Director of Student Services of Sweetwater County School District #1, BRYANT BLAKE, Principal of Black Butte High School | |
| Defendants, | |

---

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

---

This matter comes before the Court on Defendants' *Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).* (ECF No. 30). Having reviewed the pleadings and the relevant law, the Court finds that Plaintiff's Claim One and Claim Two for injunctive and declaratory relief should be dismissed because they are moot. But the Court finds Plaintiffs have sufficiently pled a violation of their constitutional rights and may proceed on Claims One and Two to seek compensatory and nominal damages.

1

Plaintiff Ashley Willey has sufficiently alleged a constitutional violation based on the Free Exercise clause, and so her Third Claim survives dismissal. But her Fourth Claim, based on First Amendment free-speech violations, may not proceed because Mrs. Willey has failed to state a claim upon which relief may be granted. Thus, the Court finds that Defendants' motion to dismiss should be granted in part and denied in part.

## Facts

Three years ago, the United States Supreme Court ruled that discrimination based on sexual preference or gender identity "because of sex," including discrimination based on transgender identity, violates Title VII. *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1740 (2020). Because Title IX of the Education Amendments prohibits sex discrimination in educational settings, the Department of Education and President Biden acted after the *Bostock* decision to eliminate gender-identity discrimination in schools. Exec. Order No. 13988, 86 FR 7023 (June 22, 2021); *Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation,* 86 Fed. Reg. 32637-01 (June 22, 2021). To comply with new federal guidelines, educational institutions across the nation implemented updated policies allowing students to use their preferred pronouns. Sweetwater County School District #1 (District) is one such institution.

In response to these changes, the District sent out a list of "Non-Negotiables" for all school staff. One of these "non-negotiable" items required staff to "use a student's preferred/chosen name or pronoun in verbal, written, and electronic communications." (ECF No. 26-6 at 2.)  The policy also required staff to "respect the privacy of all students

regarding such choice." (*Id.*) A staff member found to have violated this policy may be subject to discipline for "discrimination based on sex." (*Id.* at 3.)

This policy serves as the basis for the conflict now before the Court. A.S., a minor, attended Black Butte High School in the District. (ECF No. 26, at 6.) A.S. struggled with her gender identity and was under the care of a private therapist from November 2020 until June 2023 to address "symptoms of Depression, ADHD, past sexual abuse, and symptoms related to gender dysphoria." (ECF No. 26-1, at 2.) At the beginning of the 2021-2022 school year, A.S. asked her teachers to treat her as a male by using masculine pronouns and calling her by the male name "C." (ECF No. 26, at 6.) Per A.S.'s request—and the District policy requiring staff to respect students' privacy—A.S.'s teachers did not inform Plaintiffs Ashley Willey and Sean Willey[1] of this choice. (*Id.*)

In March 2022, Mrs. Willey realized that Black Butte staff were referring to A.S. as a male. (*Id.* at 7.) She emailed the Black Butte staff and explained that A.S. "has stated multiple times that she felt pressured into calling herself a boy, and that this makes her uncomfortable." (ECF No. 26-2, at 2.) Mrs. Willey was especially incensed that teachers were "encouraging" the name change "BEHIND her parents backs" and further explained that this had "made the situation worse." (*Id.*) Bryant Blake, the Black Butte principal, responded that he had reached out to the Human Resources Office for "more clarification" on how to handle the situation. (ECF No. 26-4, at 2.) Mrs. Willey rebuked this response,

---

[1] Ashley Willey is A.S.'s biological mother and Sean Willey appears to be A.S.'s stepfather. (ECF No. 26, at 4.) Mr. and Mrs. Willey are both parents to four other children attending school in the District. (*Id.*)

telling Mr. Blake that he didn't need further clarification beyond her instruction as the parent. (ECF No. 26-5, at 2.) She accused Black Butte staff of "actively encouraging [her] child to lie to [her] and participating in a lie." (*Id.*) Mrs. Willey instructed staff to refer to A.S. by her given female name. (ECF No. 26, at 10.) Despite this instruction, "Mr. Blake later told Mrs. Willey that he would in fact lie to her if A.S. requested to be treated as a male, that an alternate name and male pronouns be used, and her parents not be told" under the District's policy (*Id.* at 11–12.) The District Superintendent, Kelly McGovern, confirmed this in a meeting with Mr. and Mrs. Willey. (*Id.* at 12.) Mrs. Willey explained that referring to her biological daughter as a male went against her "sincerely held religious beliefs."[2] (*Id.* at 14.)

The District's policy affected Mrs. Willey in her capacity as a school employee, not just a parent. (*See id.* at 14–15.) Mrs. Willey works as a general education math teacher in a special-education class for the District. (*Id.* at 4.) She refused to agree to the portion of the District's policy that required her to "intentionally withhold[] information from parents or actively deceiv[e] them about their children's identity at school." (*Id.* at 14.) She claimed the district's policy requiring staff to refer to children by their preferred names and pronouns went against her sincerely held religious beliefs. (ECF No. 26-6, at 2–3, 5.) Despite her protest, school district staff required that she "abide to the policies that are in

---

[2] Mr. and Mrs. Willey "have sincerely held religious beliefs that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity." (ECF No. 26, at 23.) They also hold sincere religious beliefs "that parents have the non-delegable duty to direct the upbringing and beliefs and religious training of their children, including concerning human sexuality and identity." (*Id.*)

place for [the District]" because staff and administration could not make "decisions on personal and religious beliefs." (ECF No. 26-7.)

In 2023, the District amended its policy. (ECF No. 30-4.) Though the policy still requires staff to "use a student's preferred/chosen name or pronoun in verbal, written, and electronic communications," staff were now encouraged to "involve parents/guardians in the implementation of these guidelines to support the student's health, safety and well-being." (*Id.* at 2.) Unless the student stated that their health or safety was at risk, "the District is legally required to share all information about the student's educational status, including chosen names and/or pronouns, with the student's parent/guardian upon request." (*Id.*)

The District explained that this policy was in place "to respect a student's preference—not to either encourage or discourage any student from forming a preference as to chosen names or pronouns, which could be deemed discrimination based on sex." (*Id.*) And finally, the updated policy provided the potential for religious accommodations: "Staff members who are uncertain as to how to implement this procedure or are for any reason unable to implement the procedure . . . should identify their concerns with the Human Resources Director. The District will make every effort to reasonably accommodate staff members where possible." (*Id.*) Though it appears that Mrs. Willey still works for the District, A.S. no longer attends school in the state and has transferred to a different high school. (ECF No. 35.)

Plaintiffs filed this 42 U.S.C. § 1983 action, alleging four claims for relief: (1) a violation of Plaintiffs' Substantive Due Process Fundamental Parental Right to Direct the

Upbringing of Their Children; (2) a violation of Plaintiffs' Right to Free Exercise of Religion; (3) a violation of Plaintiff Mrs. Willey's Free Exercise of Religion; and (4) a violation of Plaintiff Mrs. Willey's Right to Free Speech.[3] (ECF No. 26, at 24–34.) Claims One and Two are based upon the District's treatment of A.S. and concealment of her preferred name and pronouns from Plaintiffs. Claims Three and Four are based upon Mrs. Willey's adherence to District policy as a District employee. Defendants filed a motion to dismiss all claims based upon Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 30.) That motion is now before this Court for decision.

## Legal Standard

In ruling on motions to dismiss for failure to state a claim, "[a]ll well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th Cir. 2002) (quoting *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir. 1984)). "The court must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed. The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *Id.* (citations omitted). "A Rule 12(b)(6) motion to dismiss may be granted only if it appears beyond a doubt that the

---

[3] Plaintiffs alleged these claims in their Amended Complaint, filed after this Court granted in part and denied in part their *Motion For A Preliminary Injunction*. (ECF No. 24.) The Court does not rely on its rulings in the preliminary injunction order here, as it was based on the original complaint. *See Univ. of Tex v. Camenisch*, 451 U.S. 390, 395 (1981) (holding that preliminary-injunction rulings are "less formal" and based on "evidence that is less complete" so the findings of fact and conclusions of law made by a court granting a preliminary-injunction are not binding at later stages in litigation). The Court bases its decision here only on the Amended Complaint. (ECF No. 26.)

plaintiff is unable to prove any set of facts entitling her to relief under her theory of recovery." *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)).

Defendants also moved to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The standard of review is substantially similar in considering a 12(b)(1) motion to dismiss as the standard for a Rule 12(b)(6) motion to dismiss. "Accepting the complaint's allegations as true, we consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief can be granted." *E.F.W. v. St. Stephen's Indian High Sch.,* 264 F.3d 1297, 1303 (10th Cir. 2001).

<u>Discussion</u>

**1.      Rule 12(b)(1) Dismissal of Claims One and Two: Plaintiffs' Claims Relating to A.S.**

"[T]he existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). Article III of the Constitution limits the jurisdiction of federal courts to "cases" or "controversies."  U.S. Const. art. III, § 2, cl. 1. This requires that all cases center around an active dispute with real world consequences. *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011). "[T]hroughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal citations and quotations omitted).

Defendants argue that there is "no present case or controversy" here for the Court to decide because A.S. is no longer a student at Black Butte High School. She has

transferred to another high school out of state, so the policy will no longer be enforced against her. (ECF No. 35.) Thus, Plaintiffs' first two claims are moot.[4] (ECF No. 30, at 2, 6.) Plaintiffs cite Tenth Circuit precedent to rebut this argument and claim that A.S.'s "status as a District student is irrelevant to Plaintiffs' claims for damages caused by Defendants' violations of Constitutional rights when A.S. was a District student." (ECF No. 38, at 8 (citing *Garcia v. Bd. of Educ. Of Albuquerque Pub. Schs.*, 520 F.3d 1116 (10th Cir. 2008)).

But the Court disagrees that *Garcia* can prop up the entirety of Plaintiffs' first two claims for relief. In *Garcia*, the student around whom the case revolved was a legal adult and "no longer compelled under state law to attend high school." *Garcia*, 520 F.3d at 1123. Because "little evidence exist[ed]" to show that the student would "take advantage of any benefits that she might be awarded from [the] suit," the defendants argued there was no live case or controversy to be resolved. The Tenth Circuit disagreed, but on very specific

---

[4] Defendants appear to confuse the issues of standing and mootness. They argue that claims regarding A.S. are moot because she is no longer a student but attach a Fourth Circuit decision on parental standing. (ECF No. 30, at 6; ECF No. 30-1 (*Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622 (4th Cir. 2023)). Standing and mootness are two separate issues. *Friends of the Earth, Inc. v. Laidlaw Env't Svs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). And the Court is satisfied that Plaintiffs sufficiently alleged an injury during the 2021-2022 school year. Plaintiffs claim that Defendants withheld information about their daughter's mental health and referred to A.S. by a male name, in violation of both their right to care for their child as they see fit and their First Amendment right to the free exercise of religion. (ECF No. 26, at 20–22); *Uzuegbunam v. Preczewski*, 592 U.S. 279, 801 (2021) ("We hold only that, for the purpose of Article III standing, nominal damages provide the necessary redress for a completed violation of a legal right); *Lippold v. Cole*, 468 F.3d 1204, 1216–17 (10th Cir. 2006) (finding that plaintiffs had standing to request compensatory damages for a past first amendment violation not in danger of repetition). There is an alleged injury that could be satisfied through judicial relief in the form of nominal and compensatory damages.

grounds. The Plaintiffs in *Garcia* brought their claims for relief under the Individuals with Disabilities Education Act (IDEA), and Congress had afforded avenues for relief by statute, even *after* a student graduated. *Id.* (citing 20 U.S.C. § 1415(i)(2)(C)(iii)) (emphasis added).

In contrast, Plaintiffs' claims here are § 1983 claims, which does not afford the same statutory relief as IDEA. The injury in *Garcia* could be specifically redressed under current legislation, even though the plaintiff was over the age of eighteen and no longer attending school. The Court finds that the issue here is more akin to *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219 (10th Cir. 2009). There, the plaintiff—a graduated high school student—brought First Amendment freedom of speech and freedom of religion claims against his school. *Id.* at 1223. The court began by addressing mootness, reiterating well-settled law that "when an individual graduates from school, there no longer exists a live controversy." *Id.* at 1224 (citation and quotations omitted). Because the plaintiff had graduated, she was "no longer a student under the School District's control" and she would "never again be subject to the unwritten policies of the School District." *Id.* at 1225. Thus, the plaintiff's claims for declaratory and injunctive relief were moot. *Id.*

Similar to *Corder*, A.S. has transferred to a new high school out of state. (ECF No. 35.) Mrs. Willey is no longer A.S.'s sole legal guardian (*see* ECF No. 30, at 7), and Plaintiffs do not allege that A.S. will be returning to the District at any point to complete her high school career. Neither do the Plaintiffs argue this falls under any exception to mootness. (*See generally* ECF No. 38.) But even if they had, "[a] defendant cannot be said to have voluntarily ceased allegedly illegal conduct where . . . the controversy has become moot through the normal course of events rather than through the unilateral action of the

defendant." *O'Connor v. Washburn Univ.*, 416 F.3d 1216, 1222 (10th Cir. 2005) (quotation omitted). A.S. transferred out of the district voluntarily, independent of any action by the District. She is no longer subject to the District's policies, and so similarly the Plaintiffs are no longer subject to those policies as A.S.'s guardians. Plaintiffs' claims for declaratory and injunctive relief under Claims One and Two are moot.

But Plaintiffs also request relief in the form of nominal and compensatory damages. (ECF No. 26, at 37–40.) An award of nominal or compensatory damages is an appropriate remedy for a past First Amendment violation. *See Corder*, 566 F.3d at 1225. A.S.'s transfer out of the District does not moot Plaintiff's allegations that Defendants' policy and actions violated their constitutional rights during the 2021-2022 school year.[5] *See United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973) ("The basic idea that comes out in numerous cases is that an identifiable trifle is enough for standing to fight out a question of principle." (quotation and citation omitted)). And assuming Plaintiffs' allegations are true—as the Court must at this stage—the Plaintiffs have plausibly alleged § 1983 violations under Claims One and Two.

## 2.    Claims Three and Four: Plaintiff Ashley Willey's Claims as a District Employee

### a.    Rule 12(b)(1) Dismissal for Standing

---

[5] Defendants also argue that non-public Exhibits B and C show that Plaintiffs "no longer have any input regarding A.S. whatsoever." (ECF No. 30, at 8.) The Court does not find that Exhibits B and C make such a definitive statement. (*See* ECF No. 35.) And even if it were true, it does not change the undisputed fact that A.S. was under Plaintiffs' care during the 2021–22 school year.

Defendants next argue that Mrs. Willey lacks standing to bring the remaining two claims because (1) she has not "identified any instance in which she has been asked to agree to use a student's chosen pronouns, subvert a parent's authority, or lie," nor does the current District policy require such actions; (2) she was never denied a reasonable accommodation based on religion; and (3) the District has updated its policy since 2023, now allowing for religious accommodations. (ECF No. 30 at 9–10.)

Federal courts are courts of limited jurisdiction, such that they may only preside over a case if the plaintiff has suffered an injury in fact which "is fairly traceable to the challenged action of the Defendants" and "is redressable by a favorable decision." *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006). When determining if a plaintiff has standing, "the question is not whether the alleged injury rises to the level of a constitutional violation. That is the issue on the merits." *Id.* Rather, courts must "ask only if there was an injury in fact, caused by the challenged action and redressable in court." *Id.* "A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis v. Fed. Election Comm.*, 554 U.S. 724, 734 (2008).

Both of Mrs. Willey's claims arise under the First Amendment. (ECF No. 26, at 32–36.) She claims that the District's policy requiring teachers to (1) use a student's preferred name and pronouns and (2) conceal these choices from parents violates both her right to free exercise of religion and her right to free speech because that right "includes both the decision of what to say and what not to say. (*Id.* (citing *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018)). "In the First Amendment context, the Supreme Court has recognized a 'lessening of prudential limitations on

standing' due to the difficulty of showing an injury-in-fact for certain First Amendment claims." *Rio Grande*, 57 F.4th at 1160 (citations and quotations omitted). Courts look to "whether the party invoking jurisdiction had a sufficient stake in the outcome when the suit was filed." *Id.*

In the Court's view, this argument breaks down into two sub-issues: (1) whether Mrs. Willey has standing under the original 2022 policy and (2) whether Mrs. Willey has standing under the new 2023 policy. The Court addresses each policy in turn.

Under the initial 2022 policy, Mrs. Willey has sufficiently alleged an injury. She claims that, even after explaining her religious beliefs, Defendants failed to allow her a religious accommodation. (ECF No. 26, at 23.) This is supported in exhibits attached to the Amended Complaint, showing that District Staff mandated Mrs. Willey "follow the [District] policy and procedures" because school employees may not "base [] decisions on personal and religious beliefs." (ECF No. 26-7, at 2.) The District required that Mrs. Willey "abide to the policies that are in place," despite her request for religious exemption. (*Id.*) Mrs. Willey has standing to bring her claims based on the 2022 policy.

But the newly amended policy presents a more fickle issue. In 2023, the District updated its policy. (*See* ECF No. 30-4.) Though the new policy still required staff to "use a student's preferred/chosen name or pronoun in verbal, written, and electronic communications," it now included more flexible guidelines. (*Id.* at 2.) Staff were required to "share all information" about the student with the student's parents, including their preferred name and pronouns used at school, as long as the student's health or safety was

not at risk. (*Id.*) And the District explained that it would "make every effort to reasonably accommodate staff members where possible."

Admittedly, this change raises an unsettled area in the law.[6] But ultimately, the Court is satisfied at this juncture that the new policy still confers standing. Even though the District tries to be more accommodating, staff are still required to use a student's preferred name and pronouns, even if those pronouns do not align with their assigned sex at birth. (ECF No. 30-4 at 2.) And Mrs. Willey has alleged that Defendants "have threatened to discipline District staff who do not use students' preferred pronouns." (ECF No. 26, at 36.) The Court finds that this threatened injury is "real, immediate, and direct" based on Mrs. Willey's allegations in the Amended Complaint. *See Davis*, 554 U.S. at 734. Even absent a specific instance where Mrs. Willey was required to refer to one of her students by their chosen pronouns, there is a real possibility that Mrs. Willey could be disciplined should that situation arise. Ms. Willey is subject to the District's newly amended policy as a

---

[6] Defendants briefly assert that both of Mrs. Willey's claims are moot, and Plaintiffs address mootness based on the new policy at length in their response brief. (ECF No. 30, at 11; ECF No. 38, at 8.) Higher courts have provided scant guidance on whether a new, superseding policy renders a case moot. *West Virginia v. EPA*, 142 S. Ct. 2587, 2606–07 (2022) (finding that agency repeal of original policy and implementation of a new policy did not render the action moot); *Smith v. Becerra*, 44 F.4th 1238, 1250 n.9 (10th Cir. 2022) ("[G]overnment actors still bear the 'heavy' burden of making 'absolutely clear' that the allegedly wrongful behavior could not reasonably be expected to recur" even after a policy change.); *Audubon of Kan., Inc. v. United States Dep't of Interior*, 67 F.4th 1093, 1103–04 (10th Cir. 2023) (holding that claims based on an expired policy were moot); *Clark v. Gov. of N.J.*, 53 F.4th 769, 776 (3d Cir. 2022) (finding that claims based on a rescinded COVID policy were moot). Without substantial briefing by either party or more instruction from either the Tenth Circuit or the Supreme Court, this Court declines to address mootness and assumes at this point in the litigation, without deciding, that Mrs. Willey's claims are not moot based on the updated 2023 policy.

District employee. *Cf. Roberts v. Madigan*, 921 F.2d 1047, 1052 (1990) (finding no standing for plaintiffs who were not directly affected by teacher's violation of the establishment clause, because they were never subject to teacher's silent Bible study). The Court finds that is sufficient to confer standing for Claims Three and Four.

      **b.**      **Rule 12(b)(6) Dismissal for Failure to State a Claim**

              **i.**      **Claim 3: Free Exercise of Religion**

Defendants allege that Mrs. Willey has not stated a claim upon which relief can be granted, because her religion could not be hindered by the District's policy. (ECF No. 30, at 15–16.) The policy is not "directed at any one religion or religion generally." (*Id.* at 17.) And the District also promises to make a reasonable accommodation based on religion whenever possible. (*Id.*) By assuring the option for religious accommodations, when feasible, the District has complied with its duty under the Constitution. (*Id.* at 15.)

The Free Exercise clause of the First Amendment requires that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. 1. This clause was incorporated by the Fourteenth Amendment and now applies to state and local governments, including public-school districts. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). "A plaintiff may carry the burden of proving a free exercise violation in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2421–22 (2022).

> A government policy will not qualify as neutral if it is 'specifically directed at . . . religious practice.' A policy can fail this test if it "discriminate[s] on

its face," or if a religious exercise is otherwise its 'object.' A government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a mechanism for individualized exemptions.' Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny.

*Id.* (internal citations omitted).

The Court finds that *Kluge v. Brownsburg Community Sch. Corp.*, 432 F.Supp.3d 823 (S.D. Ind. 2020) is helpful in deciding the issue at hand. There, the district court considered a teacher's claims that his schools' requirement to use student's chosen names "conflicted with his religious beliefs against affirming gender dysphoria," in violation of the Free Exercise Clause. *Id.* at 834. The Court granted defendants' motion to dismiss on this issue, finding that the school's policy was neutral and generally applicable because "it applie[d] to all faculty, not just to faculty members of a certain religion." *Id.* at 839. "[E]very teacher, regardless of religious belief, was required to address every student by the name" that the students chose, "regardless of what that name was or why." *Id.* The court dismissed the teacher's Free Exercise claim based on this policy.

Similarly, both the 2022 and the 2023 policies apply across the board to all District employees, requiring them to refer to students by their chosen name and pronouns, regardless of the employee's religious beliefs. (ECF No. 26-6, at 2–3; ECF 30-4, at 1–2.) The District policy applies to all staff and all students. (*Id.*)

Under the 2023 policy, Ms. Willey is no longer required to conceal information from parents, as was the case in *Ricard v. USD 475 Geary Cnty.*, No. 5:22-CV-4015, 2022 WL 1471372, at *9 (D. Kan. May 9, 2022). But under the 2022 policy, she was required to

15

do so, which violated her sincerely held religious beliefs against "intentionally withholding information from parents or actively deceiving them about their children's identity at school." (ECF No. 26, at 14; ECF No. 26-6, at 2–3); *See Ricard*, 2022 WL 1471372, at *9 (finding that, at the preliminary injunction stage, forcing teachers to conceal a student's preferred pronouns from their parents likely violated the First Amendment's free-exercise clause).

This differs from the religious beliefs in *Kluge*, where the plaintiff only took issue with calling students by names that did not align with their biological sex. *Kluge*, 432 F.Supp.3d at 834. And when Mrs. Willey explained her religious objection to this policy, the school denied it to her based on its "case-by-case" assessment policy. (*See* ECF No. 26-7, at 2; ECF No. 26-9 at 27.) This does not indicate that the policy was generally applicable. *See Kennedy*, 142 S.Ct. at 2422 ("A government policy will fail the general applicability requirement if it . . . provides 'a mechanism for individualized exemptions.'").

Similarly, the 2023 policy, while it removed the requirement to conceal a student's chosen name from the parents, still provided that the District would make "every effort to accommodate staff members where possible." (ECF No. 30-4, at 2–3.) This likewise does not suggest general applicability. And it differs from the policy in *Kluge* which did not provide for such exceptions.

Still, Defendants maintain that their policy complied with federal and state law, and they are not required to provide a religious accommodation in this situation. (ECF No. 30, at 16 (citing *Pickering v. Bd. of Ed. Of Twp. High Sch. Dist. 205*, 391 U.S. 563; *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Kennedy v. Brenerton Sch. Dist.*, 142 S. Ct. 2407 (2022)).

But notably, none of these cited cases were decided at a stage so early in the proceedings. *Pickering*, 391 U.S. at 567 (case before the Supreme Court after administrative review by the Illinois Supreme Court); *Garcetti*, 547 U.S. at 415 (decided on summary judgment); *Kennedy*, 142 S.Ct. at 2420 (decided on cross-motions for summary judgment). The Court declines to definitively state at this juncture that the Mrs. Willey has failed to state a claim upon which relief can be granted, especially on such a novel issue. It is possible that discovery will demand a different result down the line, but deciding this issue on a motion to dismiss is premature.

Because both policies do not appear to be generally applicable, it is likely that the District's 2022 and 2023 policies are subject to strict scrutiny. Under strict scrutiny, it is conceivable that the District's policy violated Mrs. Willey's right to freely exercise her religion. *Reed v. Town of Gilbert, AZ*, 576 U.S. 155, 180 (2015) (Kagan, J., concurring) (reiterating that strict scrutiny is a "high bar" for the government). The Court cannot conclude, at this time, that Mrs. Willey has failed to state a claim under which relief may be granted. It will be more appropriate to decide this issue later in litigation, aided by further briefing and a more developed record. The Defendants' motion to dismiss is denied as to Claim Three.

### ii.    Claim Four: Freedom of Speech

Defendants next claim that "the speech at issue is indisputably part of Ms. Willey's employment in carrying out her professional responsibilities as a teacher." (ECF No. 30, at 19.) It is reasonable to expect that employees would follow this procedure. (*Id.*) In response, Plaintiff claims that she is being forced to "mouth a message on the [District's]

behalf" by calling her students by their preferred names and pronouns. (ECF No. 38, at 18 (citing *Janus*, 138 S.Ct. at 2473)). And the Supreme Court has held "that freedom of speech includes both the right to speak freely and the right to refrain from speaking at all." *Janus*, 138 S.Ct. at 2463.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti,* 547 U.S. at 421. Thus, statements made pursuant to an employee's official duties are not protected by the First Amendment. *Janus*, 138 S. Ct. 2437. "The guiding principle is that speech is made pursuant to official duties if it involves 'the type of activities that [the employee] was paid to do.'" *Chavez–Rodriguez v. City of Santa Fe,* 596 F.3d 708, 713 (10th Cir. 2010) (citation omitted).

Here, the Court finds that *Kluge* is instructive. There, plaintiff's sixth claim for relief alleged that the school threatened to punish him for refusing call students by their preferred names. *Kluge*, 432 F.Supp.3d at 836. This "compelled [plaintiff] to communicate messages about gender dysphoria with which he disagreed." *Id.* at 837. The court found that calling students by their chosen names in the classroom was part of the plaintiff's "official duties as a teacher." *Id.* at 839.

Mrs. Willey alleges in her complaint that using "students' preferred false names and pronouns . . . within the classroom and in public when speaking about particular students" violates her First Amendment Rights. (ECF No. 26, at 35.) This Court agrees with the *Kluge* Court. Referring to a student by their chosen or preferred names in a classroom,

pursuant to a school district policy, is part of a teacher's official duties. *Kluge*, 432 F.Supp.3d at 839. And "if the speech in question is part of an employee's official duties, the employer may insist that the employee deliver any lawful message." *Janus*, 138 S.Ct. at 2437. The Court is not persuaded that calling students a preferred name, including one that does not align with a student's biological sex, forces Mrs. Willey to forgo her First Amendment right to free speech.

Mrs. Willey also contends that "[l]ying to or deceiving parents regarding their child's gender identity" violates her First Amendment right to freedom of speech. But likewise, communicating with parents about a student's progress is part of a teacher's official duties.[7] *See Duvall v. Putnam City Sch. Dist.*, 530 F. App'x 804, 814 (10th Cir. 2013) ("Ms. Duvall's communications to parents . . . were also within the scope of her job responsibilities."); *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1264 (9th Cir. 2016) ("[Communicating with parents about students' [progress in a school program] was part and parcel of [plaintiff's] job.")

Mrs. Willey cites *Meriwether v. Hartop*, 992 F.3d 492, 507 (6th Cir. 2021) to support her free speech claim. (ECF No. 38, at 18.) While this case appears compelling at first glance, there is once distinct difference. *Meriwether* involved a professor refusing to refer to students by their preferred pronouns at a public university. 992 F.3d at 498. Indeed, the

---

[7] The Court also expresses hesitation that the District's 2022 policy requiring teachers to "respect the privacy of all students regarding" preferred name or pronouns requires teachers to lie and deceive parents, in violation of a teacher's First Amendment right. But the Court declines to speak more on this issue because it finds that communicating with parents is part of a teacher's official duties.

court recognized the heightened importance of freedom of speech on a *university* campus several times. *Id.* ("Traditionally, American universities have been beacons of intellectual diversity and academic freedom."); *Id.* at 503 ("Universities have historically been fierce guardians of intellectual debate and free speech"); *Id.* at 504–06 (collecting cases that all discuss freedom of speech at public universities); *see also Schrier v. Univ of Colo.* 427 F.3d 1253, 1266 (10th Cir. 2005) (recognizing "a greater degree of conflict" in a university setting).

Further, the court relied on an "academic freedom" exception recognized in the Sixth Circuit, but not recognized by the Tenth Circuit. *See Meriwether*, 992 F.3d at 506; *Schrier*, 427 F.3d at 1266 (declining "to construe the First Amendment" to find "that professors possess a special constitutional right of academic freedom not enjoyed by other governmental employees."). So, this Court cannot be bound by the Sixth Circuit's holding in *Meriwether*.

Accordingly, the Court finds that referring to students by their preferred names and pronouns in the classroom and in written, electronic, and verbal communications relating to the classroom, are part of a teacher's official duties. Likewise, communicating with parents is also part of a teacher's official duties. Thus, under *Janus*, the District may require its teachers to deliver a lawful message, including referring to students by preferred names and pronouns. Failure to abide by this policy is not speech protected by the First Amendment. The Court finds that Mrs. Willey has failed to state a claim upon which relief may be granted, and so Ms. Willey's Fourth Claim is dismissed.

**Conclusion**

Plaintiffs' first two claims for declaratory and injunctive relief are moot because A.S. has transferred out of the District. But Plaintiffs have sufficiently pled a past violation of their constitutional rights, so Claims One and Two may proceed under theories of compensatory and nominal damages.

At this stage in litigation, it is not clear that the District's policy is generally applicable, and so it may not pass strict scrutiny. Thus, Mrs. Willey's Claim Three for violation of the Free Exercise clause survives dismissal. But Mrs. Willey fails to state a claim upon which relief can be granted as to Claim Four. All speech is part of her official duty as a teacher in a public school, and so she is not entitled to the First Amendment's protections. It is

ORDERED that *Defendants' Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)* is GRANTED IN PART AND DENIED IN PART. Plaintiffs may not proceed with any claims for declaratory and injunctive relief as to Claims One and Two but may proceed on a theory of nominal and compensatory damages on those claims. Plaintiff's Fourth Claim for relief is dismissed under Rule 12(b)(6), but Plaintiff's  Third Claim survives dismissal.

Dated this  18th   day of December, 2023.


Scott W. Skavdahl
United States District Judge

21